**Charles Seldon BAWCOM, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–99–01397–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

July 20, 2000.

Kyle B. Johnson, Houston, for appellee.

John B. Holmes, Luther Alexander Dulevitz, Houston, for State.

Panel consists of Justices O'CONNOR, TAFT, and SMITH.*

**OPINION**

JACKSON B. SMITH, Jr., Justice.

Pursuant to a plea bargain agreement, appellant, Charles Seldon Bawcom, pled

---

* The Honorable Jackson B. Smith, Jr., retired Justice, Court of Appeals, First District of

Texas at Houston, participating by assignment.

guilty to felony driving while intoxicated. The trial court assessed punishment at five years probation and a $500 fine. The trial court later revoked appellant's probation and assessed appellant's punishment, pursuant to a plea agreement, at four years in prison and a $500 fine. We address whether the trial court erred in denying appellant's motion to dismiss the State's motion to revoke probation (MRP) for failing to exercise due diligence in arresting appellant. We reverse and remand.

## Procedural Background

On July 26, 1994, appellant was placed on five years probation. On March 18, 1997, the State filed an MRP alleging several violations of the terms and conditions of appellant's probation. A capias for appellant's arrest was issued the same day. Appellant was not arrested until October 4, 1999, over two months after appellant's probation period ended, and over two and one-half years after the capias was issued.

Appellant filed a motion to dismiss the MRP based on a failure of the State to exercise due diligence in bringing appellant to court on the MRP. After a hearing on the motion to dismiss, the court denied the motion.

## Due Diligence

In his sole point of error, appellant contends the trial court committed reversible error by denying appellant's motion to dismiss the MRP for lack of due diligence when the State's diligence, in the two and one-half years after the capias was issued, consisted of three phone calls.

### A. Facts

At the hearing on the MRP, the State produced evidence of its efforts to contact appellant. The last day appellant reported was on December 19, 1996. On January 14, 1997, a letter was sent to appellant notifying him that his reporting date was reset to January 29, 1997. On January 29, 1997, a phone call was made to appellant's residence and a voice mail message was left for him. A field visit was made to appellant's residence on February 14, 1997, where the officer spoke to Chris Brown who claimed to be appellant's nephew. Brown said appellant had moved away after the new year and Brown did not know where appellant went. Brown said that appellant's mother might know where appellant was, and the officer left a business card asking the nephew to have appellant's mother call with any information about appellant's whereabouts. On February 27, 1997, phone calls were made to the references in appellant's file. Several unsuccessful attempts were made to contact Rick Bawcom. A message was left on a Ms. Brown's machine, but she did not return the call. There was also an unsuccessful attempt made to contact a "Joy G." On March 1, 1997, a call was made to appellant's supervisor at appellant's place of employment. A message was left, but no return call was received.

After the MRP was filed on March 18, 1997, the file reflects that no action was taken until October 14, 1997, when the file was sent to the probation department's offender-apprehension unit. Calls were made to phone numbers in the file, to appellant's father, brother, and sister. The three could not be reached because the phones had been disconnected. The file did not contain any information regarding whether the officers in the offender apprehension unit made any other efforts to find appellant, such as contacting DPS, telephone information, or the post office.

### B. The Law of Due Diligence

The Code of Criminal Procedure provides that: "At any time during the period of community supervision the judge may issue a warrant for violation of any of the conditions of the community supervision and cause the defendant to be arrested." TEX. CODE CRIM. P. ANN. art. 42.12, § 21(b) (Vernon Supp.2000). The substantially similar predecessor provisions

have been interpreted to mean that jurisdiction to revoke probation may extend beyond the expiration of the probationary period when the Motion to Revoke Probation (MRP) and a capias issued before such expiration. *See Prior v. State,* 795 S.W.2d 179, 183 (Tex.Crim.App.1990). A requirement that the State exercise due diligence in arresting the probationer was added in *Stover v. State,* 365 S.W.2d 808, 809 (Tex.Crim.App.1963).

▮ At one point, the Court of Criminal Appeals had held that the due diligence requirement was jurisdictional, but the present status of the law is that it becomes the State's burden to show due diligence when the issue is raised by a probationer. *See Harris v. State,* 843 S.W.2d 34, 35–36 & n. 1 (Tex.Crim.App.1992). Although the language establishing due diligence was unnecessary to the decision in *Stover,* and despite recent criticism that it "appears to have been created out of thin air,"[1] the due diligence issue remains as a defensive issue which must be raised by a probationer in an MRP proceeding.[2] *See Harris,* 843 S.W.2d at 35–36 n. 1. Once raised by the probationer, the burden is on the State to show diligence in apprehending the probationer. *Id.* at 35.

▮ In determining whether the State used due diligence in its attempts to locate a probationer, no consideration should be given to the State's efforts to locate the probationer before the State filed its motion to revoke probation. As the Texas Court of Criminal Appeals stated in *Harris,* "the State must show it used diligence *after* the motion to revoke was filed and the capias issued." 843 S.W.2d at 36 (emphasis added). There is nothing ambiguous about the Court's statement in the *Harris* opinion. Whether we agree with that Court's decision is immaterial, because, as an intermediate appellate court,

we are compelled to follow a higher court's ruling on the law.

**C. Application**

▮ The State's proof of diligence to locate appellant, after the motion to revoke his probation was filed, consisted of three telephone calls, one each to defendant's father, his brother, and his sister. The probation officer testified, however, that contact with these persons was not made, because those phones had been disconnected. The officer also testified that there was nothing in appellant's file to indicate that the Department of Public Safety had been contacted, that the telephone company's service to locate a new telephone number had been utilized, or that the post office had been contacted to determine if any forwarding address had been filed. Moreover, there is no evidence in the record that appellant had changed his place of employment, that he attempted to avoid service, or that he deliberately secreted himself.

Under the facts of this case, when the State made only three telephone calls in two and one-half years in its attempt to locate appellant, the State has failed to fulfill its burden of showing that it used due diligence in trying to locate the appellant after the State filed a motion to revoke his probation and an arrest warrant was issued. This is not a case, such as *Strickland v. State,* 523 S.W.2d 250 (Tex. Crim.App.1975), in which a period of only eight months elapsed after the warrant was issued. *Id.* at 251.

We sustain appellant's sole point of error.

**Conclusion**

We reverse the trial court's judgment and remand the case to that court to dismiss the State's motion to revoke appellant's probation.

1. *See Connolly v. State,* 983 S.W.2d 738, 741 (Tex.Crim.App.1999) (Keller, J., concurring).

2. We have declined the State's invitation to reconsider the viability of the "due diligence" doctrine. That is a matter more properly directed to the Court of Criminal Appeals.

Justice TAFT dissenting.

En banc review was requested, but a majority of the justices of the Court voted against en banc review.

TIM TAFT, Justice, dissenting.

I agree with the majority opinion that the State did not exercise due diligence in apprehending appellant, but I disagree that the analysis ends with that determination. The majority opinion does not consider a venerable Court of Criminal Appeals opinion excusing any lack of diligence when, as here, the probationer had changed residence without notifying his probation officer. Indeed, an analysis of the cases reversed for lack of due diligence reveals that the probationers' whereabouts were known, but the State failed to apprehend them. Therefore, I respectfully dissent for the reasons more fully developed below.

While the State and the trial court relied on efforts made prior to filing the Motion to Revoke Probation (MRP), appellant contends that this evidence is not relevant in determining whether the State acted with due diligence. Appellant cites *Harris*, in which the Court of Criminal Appeals stated: "That reliance [on efforts prior to filing the MRP] was misguided because the State *must* show that it used diligence *after* the motion to revoke was filed and the capias issued." *Harris*, 843 S.W.2d at 36 (emphasis added).

The State argues that, while the pre-capias acts of the State cannot be used to demonstrate due diligence, the same activity can be used to set the context from which to evaluate the post-capias activity of the State. The State then argues that, given the context of what the State knew from its pre-capias efforts, the post-capias action of the State does satisfy the requirement of due diligence. Specifically, the State argues that it knew appellant was either hiding from the State or simply could not be found. Therefore, the State acted with due diligence when it called appellant's father, brother, and sister.

I believe the State has a valid point that actions taken before the MRP is filed may be relevant in determining what actions taken thereafter might constitute due diligence, even though actions taken before filing the MRP may not constitute due diligence by themselves. The State relies on *Strickland v. State*, in which the probationer's failure to report his change of address excused a delay of eight months from the issuance of a warrant until the probationer's arrest, some seven months after the probation period expired. 523 S.W.2d 250, 251 (Tex.Crim.App.1975). If the acts of a probationer before the MRP is filed can be considered, certainly the actions of the State, before filing the MRP, should not be overlooked. More importantly, in *Strickland*, the Court of Criminal Appeals did not even examine the diligence, if any, of the State because Strickland's failure to report his change of address excused the eight-month delay in executing the arrest warrant. *See id.*

Indeed, a survey of the cases, cited by appellant as reversing for the State's failure to establish due diligence, shows a common factor: the State knew where the probationer was located, but failed to effectuate his arrest at the known address. *See Harris*, 843 S.W.2d at 35 (probationer appears to have been living with his parents, which was his last known address, when MRP filed); *Rodriguez v. State*, 804 S.W.2d 516, 518 (Tex.Crim.App.1991) (probation department knew probationer's residence and place of employment, but it was policy to cease further contact with probationer once MRP filed); *Langston v. State*, 800 S.W.2d 553, 555 (Tex.Crim.App.1990) (probation department knew probationer's address); *Moyers v. State*, 948 S.W.2d 359, 360 (Tex.App.—Amarillo 1997, no pet.) (probationer's out-of-state address known); *Sessions v. State*, 939 S.W.2d 796, 798 (Tex.App.—El Paso 1997, no pet.) (probation department knew probationer's out-of-state address); *Holtzman v. State*, 866 S.W.2d 728, 729 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd) (deputy did not fol-

low up information, given by unknown person at appellant's last known address, that probationer was in jail in Florida); *Burch v. State,* 821 S.W.2d 385, 387 (Tex.App.—Waco 1991, no pet.) (probation department had received signed return receipts for letters informing of delinquent payments at probationer's out-of-state address).

In this case, appellant had changed his place of residence without permission of the Court, through his probation officer, in violation of the conditions of his probation. Therefore, appellant's unlawful actions rendered his current location unknown to the State. Attempts were made to locate appellant by calling references in appellant's file, to no avail. As appellant points out, however, some rather basic attempts to locate appellant apparently were not made, such as by checking telephone information, the post office, or the Department of Public Safety. These are the types of actions taken when a probationer is placed in the absconder caseload of the Brazos County Probation Department. *See Harris,* 843 S.W.2d at 35. Furthermore, the attempt to locate appellant at his place of employment consisted only of leaving a message without following up on it. There is also no showing by the State that any attempt was made to locate appellant's mother.

The State argues it is a fair inference from the fact of his arrest that appellant's information was entered into the computer. The circumstances of appellant's arrest were not developed in the record, however, and thus we should decline to make any inference concerning computer entries or appellant's arrest. Appellant's motion to dismiss alleges that appellant was arrested on the job, but this fact, also, was not developed at the hearing.

While the State's diligence in this case was nothing of which to be proud, I would hold that appellant's actions in not reporting his change of address excused the State's delay in effectuating appellant's arrest just two months past the expiration of appellant's period of probation. *See*

*Strickland,* 523 S.W.2d at 251 (in which defendant was arrested seven months past expiration of probation).

Accordingly, I would overrule appellant's sole point of error.