**Charles Seldon BAWCOM, Appellant,**

v.

**The STATE of Texas.**

No. 1427–00.

Court of Criminal Appeals of Texas.

June 26, 2002.

Kyle B. Johnson, Houston, for appellant.

Luther A. Dulevitz, Assist. DA, Houston, Matthew Paul, State's Attorney, Austin, for state.

### OPINION

KELLER, P.J., delivered the opinion of the Court in which KEASLER, HERVEY, HOLCOLMB, and COCHRAN, JJ., joined.

This is a probation revocation case in which the probationer failed to report as required. The State made numerous efforts to contact the probationer before filing a motion to revoke probation[1] and made a few efforts to contact him after the capias issued, but the probationer was not apprehended until after his probationary period had expired. The question presented is whether the trial court may consider actions taken by the State before the motion to revoke is filed in determining whether the State has exercised due diligence in apprehending the probationer.[2] We hold that the trial court may consider such evidence.

### A. The Facts

The last day appellant reported for his probation was December 19, 1996. He was scheduled to report on January 10, 1997 but failed to do so. On January 14, 1997, the authorities sent to appellant's last known address a letter notifying him that his reporting date was reset to January 29, 1997. On January 29, 1997, a phone call was made to the residence and a voice mail message was left for appellant. Appellant did not return the phone call. A field visit was made to appellant's home on February 18, 1997, and the officer making the visit spoke to a man named Chris Brown, who claimed to be appellant's nephew. Brown said that appellant had moved away after the new year and Brown did not know where appellant went. Brown said that appellant's mother might know where appellant was, and the officer left a business card asking the nephew to have appellant's mother call with any information regarding appellant's whereabouts.

On February 27, 1997, phone calls were made to the references in appellant's file: Several unsuccessful attempts were made to contact a Rick Bawcom, a message was left on a Ms. Brown's machine, and an unsuccessful attempt was made to contact a "Joy G." None of the recipients of these calls made a return phone call. On March 1, 1997, a call was made to appellant's supervisor at appellant's place of employment. A message was left, but no return call was received.

A motion to revoke was filed on March 18, 1997, and a capias was issued on that same date. The file reflects no action taken until October 14, 1997, when the file was sent to the probation department's offender-apprehension unit. Calls were subsequently made to phone numbers in the file, and to appellant's father, brother, and sister. The three could not be

---

1. Probation is now referred to by statute as "community supervision." *See* TEX. CODE CRIM. PROC., Article 42.12, generally.

2. The State's other ground for review—involving whether due diligence applies to absconding defendants—is dismissed as improvidently granted.

reached because the phones had been disconnected. The file did not contain any information regarding whether the officers in the offender apprehension unit made any other efforts to find appellant, such as contacting the Department of Public Safety, telephone information, or the post office.

Appellant was eventually arrested on October 4, 1999, over two months after his probationary period had ended. At a revocation hearing held on October 28, 1999, appellant asserted the due diligence defense, and witnesses were heard on the matter. In revoking appellant's probation, the trial court specifically commented on the evidence it had considered:

> I've read your cases, the cases submitted by the State and defense. I did read the case that you mentioned regarding the State using information or using evidence of diligence after the motion to revoke was filed. However, it seems, while it's hard for me to imagine, that the Court would mean that would cut off any information that was not known or any efforts that were made prior to a motion being filed. In other words, that the—it would require the State to redo everything they had done before in trying to locate someone. So, I find there was due diligence in this case and I am denying your motion to dismiss.

### B. The Court of Appeals Opinion

Relying upon our earlier opinion in *Harris*,[3] the Court of Appeals discounted efforts to contact appellant that were made before the motion to revoke was filed (and the capias issued).[4] The court concluded

that three telephone calls in two-and-a-half years did not constitute due diligence in apprehending appellant. Consequently, the Court of Appeals reversed the trial court's judgment, and remanded the case with instructions to dismiss the State's motion to revoke appellant's probation.

### C. Analysis

In *Harris*, this Court stated:

> The Court of Appeals incorrectly relied on the letters and phone call to 302 Sterling before the capias issued as evidence of the State's diligence. That reliance was misguided because the State must show that it used diligence after the motion to revoke was filed and the capias issued. *Rodriguez*, 804 S.W.2d at 519; *Langston*, 800 S.W.2d at 555; *Prior*, 795 S.W.2d at 185.[5]

The State contends that the Court of Appeals read *Harris* too broadly: that *Harris* prohibits considering pre-capias actions as evidence of diligence but does not prohibit considering such actions in determining whether post-capias actions were diligent. The State then argues that prohibiting the consideration of pre-capias actions would require the State to slavishly repeat earlier futile actions and would reward absconding probationers. We think the Court of Appeals has correctly read *Harris*. The State's attempt to create a distinction is an attempt at hairsplitting that would create confusion about how to apply the due diligence standard. Nevertheless, there is persuasive force to the State's claim that trial courts ought to be allowed to consider the authorities' pre-capias attempts to locate a probationer, and we recently undertook a re-examina-

---

**3.** *Harris v. State*, 843 S.W.2d 34, 36 (Tex. Crim.App.1992).

**4.** *Bawcom v. State*, 24 S.W.3d 613, 615 (Tex. App.-Houston [1st Dist.] 2000).

**5.** *Harris*, 843 S.W.2d at 36.

tion of the due diligence doctrine in *Peacock*.[6] Therefore, we take this opportunity to re-examine the continuing viability of the rule announced in *Harris*.

### 1. Rules for Overruling Precedent

 Under the doctrine of *stare decisis*, it is often "better to be consistent then right." [7] This doctrine "promotes judicial efficiency and consistency, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." [8] However, overruling precedent is acceptable under certain circumstances.[9] Some factors that support overruling precedent are: (1) when the original rule is flawed from the outset, (2) when older precedent conflicts with a newer decision that is found to be more soundly reasoned, and (3) when the rule consistently creates unjust results or places unnecessary burdens upon the system.[10] An examination of these factors convinces us that the rule in *Harris* should be abandoned.

### 2. Flawed at the Outset

*Harris* relied upon three cases for its holding—*Rodriguez, Langston,* and *Prior*—but none of these cases actually supports the holding. In *Rodriguez,* a probation officer testified that it was the policy of the probation office to cease any further contact with the probationer after a warrant had been issued.[11] No one from the probation office had attempted to contact the defendant, even though they knew his address and place of employment.[12] The State argued, unsuccessfully, that its lack of diligence should be excused because the defendant stopped reporting once he discovered that a motion to revoke had been filed.[13] The page in the *Rodriguez* opinion cited by *Harris* contains the following paragraph:

> In the instant case, and contrary to the situation in *Hardman* [*v. State,* 614 S.W.2d 123 (Tex.Crim.App.1981) ], appellant properly raised and developed the issue of lack of due diligence at the revocation hearing. The burden then shifted to the State, which failed to show it had made a diligent effort to apprehend appellant almost two years after the warrant had been issued for his arrest. Appellant's motion to dismiss should have been granted.[14]

The language "almost two years after the warrant had been issued for his arrest," upon which *Harris* apparently relied, simply indicates that the State had failed to show diligence, not that a trial court should ignore efforts to locate a probationer that occur before a capias has issued. Because the defendant did not cease to report until *after* he discovered the pending motion to revoke, *Rodriguez's* focus on the issuance of the warrant as the beginning point in the due diligence inquiry is not surprising.

In *Langston,* the prosecutor's office filed a motion to revoke probation based upon

---

**6.** *Peacock v. State,* 77 S.W.3d 285 (Tex.Crim. App.2002).

**7.** *Malik v. State,* 953 S.W.2d 234, 236 (Tex. Crim.App.1997).

**8.** *Jordan v. State,* 54 S.W.3d 783, 786 (Tex. Crim.App.2001); *Hammock v. State,* 46 S.W.3d 889, 892 (Tex.Crim.App.2001).

**9.** *Jordan,* 54 S.W.3d at 786.

**10.** *Hammock,* 46 S.W.3d at 892–893. This is not an exclusive list.

**11.** *Rodriguez v. State,* 804 S.W.2d 516, 518 (Tex.Crim.App.1991).

**12.** *Id.*

**13.** *Id.*

**14.** *Id.* at 519.

an arrest for driving while intoxicated.[15] The defendant contacted the authorities about the motion and was advised of the probation violation and that a warrant was outstanding.[16] The defendant said he would contact his attorney.[17] Although the authorities were aware of the defendant's address, they took no action to apprehend him until he appeared in court for the driving while intoxicated case.[18] The State contended that the due diligence defense did not apply because of a "lack of cooperation by Appellant to see to this matter when notified of the pending Motion to Revoke Probation." [19] This Court rejected the State's argument in the following passage:

> However, the record does not show diligence on the part of the State in apprehending appellant on the motion to revoke probation. The seven and one-half month delay from the expiration of probation until appellant's arrest is unexplained. The capias was sent to Harris County. Appellant's address there was known. As the prosecutor admitted in his argument on the motion to dismiss, there was no indication that appellant was hiding. The San Patricio County probation officer had no conversations with the Sheriff's office about appellant. Absent due diligence by the State in apprehending appellant, the motion to dismiss should have been granted.[20]

Nothing in this passage indicates that a trial court cannot consider pre-capias efforts to locate a defendant for the purpose of determining due diligence. As the facts of the case make clear, the defendant was never missing, so there was no occasion to carry out a pre-capias attempt to locate him.

In *Prior*, the defendant failed to report to his probation officer, had not obtained permission to leave the county, and was arrested in New Hampshire.[21] Based upon these facts, the court of appeals rejected the defendant's due diligence claim.[22] Before this Court, the defendant claimed that the State failed to act diligently because "there was no evidence explaining the six-year delay between the time the warrant was issued and the time it was executed and no evidence that the State attempted to contact appellant by mail, phone, or at his home address." [23] We held that the defendant failed to preserve the due diligence claim on appeal by failing to raise the defense at trial.[24] We had no occasion to address the merits of the defendant's due diligence claim, much less to hold that pre-capias actions would not suffice to establish diligence.

Thus, the three cases cited by *Harris* for the proposition that pre-capias efforts cannot constitute evidence of due diligence do not in fact stand for that proposition. Yet the *Harris* Court did not even acknowledge that it was creating a new rule but cited cases as if the rule it laid down were already established.

Moreover, *Harris* contained other facts that showed a lack of diligence even after

---

**15.** *Langston v. State,* 800 S.W.2d 553, 555 (Tex.Crim.App.1990).

**16.** *Id.*

**17.** *Id.*

**18.** *Id.*

**19.** *Id.*

**20.** *Id.*

**21.** *Prior v. State,* 795 S.W.2d 179, 185 (Tex. Crim.App.1990).

**22.** *Id.*

**23.** *Id.*

**24.** *Id.*

taking pre-capias events into account. In 1979, the defendant was placed on probation for five years.[25] The defendant requested courtesy supervision in Tarrant County, where he planned to live with his brother, but he later decided not to relocate there.[26] After two visits, the defendant stopped reporting to his probation officer.[27] To locate the defendant, the authorities mailed letters to his address in College Station in April, May, July, and October of 1979.[28] None were answered, but none were returned as undeliverable.[29] In June 1980, the probation office called the defendant's mother requesting that he appear.[30] On September 24, 1980, a motion to revoke was filed, a capias for the defendant's arrest was issued, and the defendant's name was placed into the TCIC/NCIC system.[31] The defendant was served with the capias when he was arrested in July of 1990 for driving while intoxicated.[32] His probation was revoked on February 20, 1991.[33]

The record showed that the defendant lived in only three places during the period from 1979 to 1990:(1) with his parents at 302 Sterling Street in College Station, (2) with his brother for several months, and (3) at 305 Sterling Street in College Station, in a house across the street from his parents, for the remainder of that period.[34] In 1987, the defendant began full-time work for a local business.[35]

For nearly a decade, the authorities did nothing to attempt to locate the defendant.[36] Even though they had information regarding his parents and his brother, no evidence was introduced to show that any agent of law enforcement or the probation office ever went to Sterling Street, wrote to Sterling Street, or made any effort to reach the defendant's brother in Fort Worth.[37] The authorities' failure to locate the defendant for such a long time when the defendant was within easy reach surely rebutted any inference of due diligence arising from the pre-capias efforts to locate him. Thus, *Harris's* holding was flawed not only because the cited cases did not support the holding but also because the holding itself was unnecessary under the facts.

### 3. *Conflict with Newer, More Soundly Reasoned Precedent*

We recently revisited the due diligence defense in *Peacock*. In that case, the defendant received permission from authorities to move from Whitney to Fort Worth, and he reported to the probation office the specific address in Fort Worth at which he was living.[38] He also told authorities that he was maintaining his post office box in Whitney as his mailing address and that his mother, who lived in Whitney, could be used as a contact person.[39] In December 1997, authorities contacted the defendant

25. *Harris,* 843 S.W.2d at 35.

26. *Id.*

27. *Id.*

28. *Id.*

29. *Id.*

30. *Id.*

31. *Id.*

32. *Id.*

33. *Id.*

34. *Id.*

35. *Id.*

36. *Id.* at 36.

37. *Id.*

38. *Peacock,* 77 S.W.3d at 287.

39. *Id.* at 287.

through his mother.[40] The defendant responded to the contact by reporting to the probation office, where he took and failed a drug test.[41] After that incident, the defendant stopped reporting to the probation office.[42] A motion to revoke was filed and a capias issued in April 1998.[43] On April 22, the capias was entered into TCIC, and authorities sent a letter to the defendant's post office box in Whitney.[44] No other attempt was made by authorities to contact the defendant until his eventual arrest on September 26, 1999, nearly three months after his community supervision period had expired.[45]

We held that the authorities had prematurely characterized the defendant as an absconder:[46] "The probation office classified the appellant as an 'absconder' without differentiating between probationers who have simply not walked through the front door and those taking furtive actions to hide from the law."[47] We noted that Black's Law Dictionary defines "abscond" to mean "to depart secretly or suddenly, especially to avoid service of process; to conceal oneself."[48] The authorities failed to determine that the defendant was in fact an absconder because they did not attempt to reach him at his Fort Worth address or through his mother—even though this contact information was in the file.[49] We emphasized that due diligence helped a court determine "whether the probationer cannot be found because he is trying to elude capture or because no one is looking for him."[50] In discussing the due diligence defense we acknowledged that the defense had no express statutory basis but maintained that it was a corollary of the implicit extension of jurisdiction beyond the expiration of the probationary period: "The logic that reasons in favor of not allowing an absconding probationer to benefit from his cunning would also seem to dictate a determination that he is actually an absconder. From this logic flows the requirement of due diligence."[51]

■ *Harris's* bright-line rule excluding from consideration the authorities' pre-capias efforts to locate probationers is contrary to the purpose, articulated in *Peacock*, of preventing absconding probationers from benefitting from their wrongful conduct. The timing of the State's efforts to locate the probationer—including whether those efforts occurred before or after the filing of a motion to revoke and the issuance of a capias—are simply factors that reflect on the diligence of the State's efforts.

### 4. *Unjust Results and Unnecessary Burdens*

■ As discussed above, excluding from the due diligence determination pre-capias efforts to locate a probationer would benefit those who choose to hide from the law.

**40.** *Id.* at 287.

**41.** *Id.*

**42.** *Id.*

**43.** *Id.*

**44.** *Id.* at 287

**45.** *Id.* at 286 and 287.

**46.** The Texas Department of Criminal Justice has its own definition of "absconder." We are not using TDCJ's definition in this opinion but are using the word in accordance with its ordinary meaning.

**47.** *Id.* at 288.

**48.** *Id.* at 289 n. 1 (citing BLACK'S LAW DICTIONARY 6 (7th ed.1999)).

**49.** *See id.* at 288.

**50.** *Id.* at 289.

**51.** *Id.* at 289.

Such a rule also encourages authorities to repeat any pre-capias actions after the capias has issued, even if such a repeat of efforts would be futile—because the State would not want to forfeit the use of such actions in a later due diligence determination. We will not require authorities to repeat efforts to contact a probationer that have already been determined to be fruitless.

## D. Conclusion

█ Insofar as *Harris* held that actions taken before a motion to revoke is filed or a capias is issued could not be considered as evidence of due diligence, it is overruled. The case is remanded to the Court of Appeals for further proceedings consistent with this opinion.

WOMACK, J., joined the opinion except for Section C1.

JOHNSON, J., filed a concurring opinion in which MEYERS, J., joined.

PRICE, J., concurred in the result.

JOHNSON, J., filed a concurring opinion in which Meyers, J., joined.

I concur in the judgment of the Court. I do not agree that *Harris v. State*, 843 S.W.2d 34 (Tex.Crim.App.1992), should be overruled. *Harris'* holding appears on page 36.

> The Court of Appeals incorrectly relied on the letters and phone call to 302 Sterling before the capias issued as evidence of the State's diligence. That reliance was misguided because the State must show that it used diligence after the motion to revoke was filed and the capias issued.

I do not read that holding to require the courts to ignore pre-*capias* efforts to contact the probationer; it appears merely to proscribe reliance on such efforts as a basis for finding diligence by the state after the *capias* issues.

The appellant in *Harris* was easily findable with minimal effort. He continued to live on the same block and work in the same community, yet the authorities made little effort to contact him or known family members at their known addresses. This Court held that letters to the appellant before the *capias* issued did not make up for the complete lack of effort after issuance of the *capias*.

In this case, appellant failed to respond to pre-*capias* letters and telephone calls and moved without permission. His known contacts did not know his whereabouts or failed to respond to efforts to contact appellant. After the *capias* issued, telephone calls to appellant's family were repeated, but their telephones were disconnected. Having exhausted known contacts, the state apparently quit looking.

While the state may be faulted for failing to enter appellant into TCIC/NCIC or to periodically check the city directory and telephone book, the law does not require a vain act. In such circumstances, pre-*capias* efforts may be a partial explanation of apparent lack of diligence post-*capias*. *Harris* did not forbid consideration of such pre-*capias* efforts, only reliance on them to justify *de minimis* efforts post-*capias*. The state must indeed show appropriate diligence after the *capias* issues. It may be appropriate to consider pre-*capias* efforts in considering whether post-*capias* efforts constitute due diligence, but pre-*capias* efforts will not excuse inaction by the state after a *capias* issues.