Charles Seldon BAWCOM, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–99–01397–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 29, 2002.

Kyle B. Johnson, Houston, for appellant.

Luther A. Dulevitz, Asst. Dist. Atty., Houston, for the State.

Panel consists of Justices HEDGES, TAFT, and JENNINGS.

## OPINION ON REMAND FROM THE COURT OF CRIMINAL APPEALS

TIM TAFT, Justice.

On original submission, this Court, relying on *Harris v. State*,[1] held that the State's actions before a motion to revoke probation ("MRP")[2] was filed and capias was issued could not be considered in de-

---

1. 843 S.W.2d 34, 36 (Tex.Crim.App.1992).

2. The Legislature adopted the term "community supervision" for "probation" effective September 1, 1993. Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 4.04, 1993 Tex. Gen. Laws 3716, 3743. The terms are generally used interchangeably. *See id.; Ex parte Renfro*, 999 S.W.2d 557, 559 n. 2 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd).

termining whether the State exercised due diligence in apprehending appellant. *Bawcom v. State*, 24 S.W.3d 613, 615 (Tex. App.-Houston [1st Dist.] 2000), *rev'd*, 78 S.W.3d 360 (Tex.Crim.App. 2002) (designated for publication). Accordingly, considering only the State's post-MRP actions, we held that the State did not exercise due diligence. *Id.* We thus reversed and remanded with instructions to dismiss the MRP. *Id.* The Court of Criminal Appeals reversed our judgment, overruling *Harris* to hold that the State's actions occurring before an MRP is filed or capias is issued may be considered in determining due diligence. *Bawcom* at 361, 366–67. Upon remand, we again address whether the trial court abused its discretion in denying appellant's motion to dismiss the MRP for the State's alleged failure to exercise due diligence in apprehending appellant. We now affirm.

## Background

Pursuant to a plea-bargain agreement, appellant, Charles Seldon Bawcom, pled guilty to the felony offense of driving while intoxicated. On July 26, 1994, the trial court assessed punishment at five years in prison, probated for five years, and a $500 fine. On March 18, 1997, the State filed an MRP, and capias was issued the same day. Appellant was not arrested until October 4, 1999, over two months after appellant's community-supervision period had ended on July 26, 1999 and over two and one-half years after the capias had issued.

Appellant moved to dismiss the MRP for the State's failure to exercise due diligence in apprehending and bringing him to court on the MRP. The trial court denied the motion after a hearing. Pursuant to a plea-bargain agreement, appellant then pled true to the MRP's allegations. The trial court revoked appellant's community supervision and, pursuant to the agree-

ment, assessed punishment at four years in prison and a $500 fine.

## Discussion

In his sole point of error, appellant contends the trial court committed reversible error by denying his motion to dismiss the MRP for the State's failure to exercise due diligence in apprehending and bringing him to court.

## A. The Law of Due Diligence

 "At any time during the period of community supervision the judge may issue a warrant for violation of any of the conditions of the community supervision and cause the defendant to be arrested." TEX.CODE CRIM. PROC. ANN. art. 42.12, § 21(b) (Vernon Supp.2002). A trial court may hear an MRP after the community-supervision period has expired: allowing otherwise would reward an absconder who is able to elude capture until his community-supervision period has ended. *Peacock v. State*, 77 S.W.3d 285, 287 (Tex.Crim. App.2002); *Prior v. State*, 795 S.W.2d 179, 183 (Tex.Crim.App.1990). For the trial court's jurisdiction to extend beyond the community-supervision period's expiration, however, (1) an MRP must be filed and (2) capias must be issued during the community-supervision period. *Peacock*, 77 S.W.3d at 287.

 The State must then also exercise due diligence "to apprehend the probationer and to hear and determine the allegations in the motion." *Id.* (citing *Rodriguez v. State*, 804 S.W.2d 516, 517 (Tex.Crim.App.1991)). "Requiring the State to show due diligence in executing the capias helps a court determine whether the probationer cannot be found because he is trying to elude capture or because no one is looking for him. Just as the probationer should not benefit from hiding, the State should not benefit by doing nothing

meaningful to execute a capias, i.e., if a probationer is not being sought, there is no reason for the court to have continuing jurisdiction." *Peacock,* 77 S.W.3d at 289. The State's actions occurring before an MRP is filed or capias is issued may be considered in determining due diligence. *Bawcom,* at 361, 366–67. Due diligence can be shown by proof of reasonable investigative efforts to apprehend the defendant. *Peacock,* 77 S.W.3d at 288. In contrast, diligence may be lacking if the State does not explain lengthy delays in the arrest. *See Rodriguez,* 804 S.W.2d at 518; *Langston v. State,* 800 S.W.2d 553, 555 (Tex.Crim.App.1990), *overruled on other grounds, Harris v. State,* 843 S.W.2d 34, 35 n. 1 (Tex.Crim.App.1992); *Sessions v. State,* 939 S.W.2d 796, 798 (Tex.App.-El Paso 1997, no pet.).

■ To preserve the issue, the defendant must raise due diligence before or during the revocation hearing. *Peacock,* 77 S.W.3d at 287–88. Once the defendant raises the issue, the State must show due diligence by a preponderance of the evidence. *Id.* at 288. We review the trial court's ruling for abuse of discretion, viewing the evidence in the light most favorable to that ruling. *Beaty v. State,* 49 S.W.3d 606, 607 (Tex.App.-Beaumont 2001, pet. ref'd). Witness credibility is for the trial court to assess. *Strickland v. State,* 523 S.W.2d 250, 251 (Tex.Crim.App.1975).

## B. Facts

The State produced the following evidence of its pre-MRP efforts to contact appellant. The last day appellant reported to his community-supervision officer was December 19, 1996, although he was to report again on January 10, 1997. On January 14, 1997, appellant was advised by letter that his reporting date had been reset to January 29, 1997. Appellant again failed to report. On January 29, 1997, a voice-mail message was left at appellant's residence, but no one returned the call. An officer visited appellant's residence on February 14, 1997, where the officer spoke to Chris Brown, who claimed to be appellant's nephew. Brown said that appellant had moved away after the new year and that Brown did not know where he went. When Brown said that his mother[3] might know where appellant was, the officer left a business card and asked Brown to have his mother call with "any information concerning appellant's whereabouts if they speak to [appellant]."

On February 27, 1997, phone calls were made to the references in appellant's file, including a Rick Bawcom, a Ms. Brown, and a "Joy G." Rick Bawcom did not return the several phone messages left for him. Brown did not return the message left on her answering machine. Joy G. could not be reached. On March 1, 1997, a phone message was left for appellant's supervisor at appellant's work place. The supervisor never returned the call.

The State also produced the following evidence of its post-MRP actions. On October 14, 1997, appellant's file was sent to the community-supervision department's offender-apprehension unit. Officers in the unit called appellant's father, brother, and sister, whose phone numbers were in the file; however, these family members could not be reached because their phones had been disconnected. Appellant's file did not contain any information regarding whether the unit officers made any other efforts to find appellant, such as contacting

---

**3.** Our prior opinion and the Court of Criminal Appeals's opinion indicate that Brown was referring here to appellant's mother, but the record indicates that Brown was referring to his own mother.

the Department of Public Safety ("DPS"), the phone company, or the post office.[4]

## C. Application of the Law to the Facts

█ The trial court would not have abused its discretion if it implicitly found that appellant's own actions or his hiding prevented his apprehension. For example, the results of the State's pre-MRP investigation, which included a visit to appellant's home, indicated that appellant had violated his community-supervision conditions by changing his residence without court permission; at least one relative (Brown), who lived at appellant's residence, stated appellant had moved away to a location unknown; another relative (Brown's mother), for whom an officer left instructions to call with information about appellant, did not respond; and three of appellant's own references did not return officers' phone messages. Given this pre-MRP context, the trial court did not abuse its discretion when it ruled that the State acted with due diligence, even though the State's only ac-

tions after filing the MRP were to call some of appellant's other relatives one time. We distinguish the cases, on which appellant relies, in which courts have reversed for lack of due diligence: in each, the State knew or had indications of where the probationer was, but failed to effectuate his arrest.[5] Here, in contrast, the record supports the implicit conclusion that appellant had hidden himself or intentionally rendered his location unknown.

As appellant points out, however, the State did not take some rather basic steps to locate him. For example, no one followed up on the one call to appellant's work supervisor. There was also no attempt to locate Brown's mother, who purportedly knew of appellant's whereabouts. Additionally, no officer contacted the DPS, the phone company, or the post office. These last types of actions are generally taken when a probationer is placed on the absconder caseload of the Brazos County Probation Department. *See Harris,* 843 S.W.2d at 35.

4. The State argues it is a fair inference from the fact of appellant's arrest that his information was entered into the statewide criminal-information database used by law enforcement agencies. However, the circumstances of appellant's arrest were not developed in the record, and we thus decline to make any such inference. *See Bawcom v. State,* 24 S.W.3d 613, 617 (Tex.App.-Houston [1st Dist.] 2000) (Taft, J., dissenting, declining to make this inference in State's favor), *rev'd,* Bawcom, (Tex.Crim.App. 2002).

5. *See Harris,* 843 S.W.2d at 36 (probationer never left county except to live with relatives known to probation department, lived and worked in same city for years, and "had not escaped from custody and gone into hiding."); *Rodriguez v. State,* 804 S.W.2d 516, 518 (Tex. Crim.App.1991) (probation department knew probationer's residence and place of employment, but department had policy to cease further contact with probationer once warrant issued); *Langston v. State,* 800 S.W.2d 553, 555 (Tex.Crim.App.1990) (probationer's address known), *overruled on other grounds,*

*Harris,* 843 S.W.2d at 35 n. 1; *Moyers v. State,* 948 S.W.2d 359, 360–61 (Tex.App.-Amarillo 1997, no pet.) (probationer's out-of-state address known); *Sessions v. State,* 939 S.W.2d 796, 798 (Tex.App.-El Paso 1997, no pet.) (probationer's out-of-state address known); *Holtzman v. State,* 866 S.W.2d 728, 729 (Tex. App.-Houston [14th Dist.] 1993, pet. ref'd) (deputy did not follow up information, given by unknown person at appellant's last known address, that probationer was jailed in Florida); *Perry v. State,* 841 S.W.2d 924, 925 (Tex. App.-Corpus Christi 1992, no pet.) (probationer's address known); *Burch v. State,* 821 S.W.2d 385, 387 (Tex.App.-Waco 1991, no pet.) (State did not serve capias for years, although probation department had received signed return receipts for letters sent to out-of-state address of probationer, who had been given permission to serve probation in that state); *Hunter v. State,* 820 S.W.2d 5, 7 (Tex. App.-Austin 1991, no pet.) (probation department's file contained letter with out-of-state street address for probationer, yet probationer not arrested until nine years later).

Although the State could have done more, we hold that appellant's actions in not reporting his address change excused the State's delay in effectuating appellant's arrest until just over two months past the expiration of appellant's community-supervision period. *See Strickland,* 523 S.W.2d at 251 (holding State sufficiently diligent when defendant, who failed to report address change, was arrested seven months past expiration of community supervision); *Beaty,* 49 S.W.3d at 608–09 (holding State sufficiently diligent—despite 14 months' delay between capias and arrest and five months' delay between community-supervision period's expiration and arrest—when defendant's daughter told officer she had not known where defendant was for two years, defendant's sons twice told officer they did not know where defendant was, and neighbor was asked to report if she saw defendant, but did not report; dissenting opinion notes that officers did not visit defendant's home, contact him through mail, question his labor union, check Social Security records, or check probation files to find acquaintances to contact). Accordingly, we hold the trial court did not abuse its discretion in finding that the State acted with due diligence in apprehending appellant and, thus, in denying appellant's motion to dismiss.

Accordingly, we overrule appellant's sole point of error.

### Conclusion

We affirm the judgment of the trial court.