NO. 12-02-00221-CR



IN THE COURT OF APPEALS



TWELFTH COURT OF APPEALS DISTRICT


 

TYLER, TEXAS


 


JAMES BURNS,
§
 APPEAL FROM THE 349TH

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 HOUSTON COUNTY, TEXAS






 

 James A. Burns ("Appellant") pleaded guilty to the offense of attempted murder and was
sentenced to ten years of imprisonment pursuant to the "Special Alternative Incarceration Program." (1)
Once Appellant was released from prison, the trial court placed him on probation for ten years. After
seven years, the State moved to revoke Appellant's probation and the trial court issued a capias for
Appellant's arrest. In one issue, Appellant contends that the trial court abused its discretion in
revoking his probation because the State failed to exercise due diligence in procuring his arrest. We
affirm.


Background

 On November 4, 1991, Appellant pleaded guilty to attempted murder and was sentenced to
ten years of imprisonment. On February 3, 1992, Appellant was released to community supervision
and, pursuant to Section 3g(b) of article 42.12 of the Texas Code of Criminal Procedure, was placed
on probation for a term of ten years. On February 9, 1998, the State moved to revoke Appellant's
probation, alleging that he violated the terms of his probation by failing to (1) report to his probation
officer, (2) pay the probation supervision fee, (3) reimburse the county for his attorney's fees, and
(4) pay restitution to the victim of his crime. On February 13, 1998, the trial court signed an order
directing the district clerk to issue a capias for Appellant's arrest. The capias was not executed until
Appellant's arrest in April of 2002, two months after his probationary period expired and four years
after the capias was issued. (2) 

 On July 12, 2002, Appellant filed a "Motion to Dismiss for Want of Prosecution," seeking
to dismiss the State's motion to revoke his probation on the basis that the State failed to exercise due
diligence in apprehending Appellant and in hearing and determining the allegations in the State's
motion. 

 The trial court held hearings on both motions on July 18, 2002. The first motion the court
heard was Appellant's motion to dismiss. The State called Cindy Maria Garner ("Garner"), the
District Attorney of Houston County, to testify as to the diligent efforts the State made in attempting
to apprehend Appellant. (3) Garner testified that as soon as she filed the motion to revoke, the district
attorney's office began looking for Appellant. She told the court that they had talked to the
probation department, but that department did not have any knowledge of Appellant's location. 
Garner further testified that on September 22, 1998, one of her investigators sent a fax to the Texas
Department of Human Services asking if it had any information regarding Appellant's last place of
employment. This inquiry was fruitless. 

 Garner later heard through one of her employees that had a family member who was involved
with Appellant that Appellant was living at a particular address in Travis County. To follow up on
this tip, Garner had the grand jury clerk contact the Travis County Sheriff's Department on February
3, 1999 in order to have Appellant arrested at the address Garner was given. This effort was fruitless
as well because the Travis County Sheriff's Department was unable to locate Appellant at that
address. Garner also testified that in two other instances, one in February of 2001 and another at an
unknown time, the Travis County Sheriff's Department tried to locate Appellant, unsuccessfully, at
that address.

 In July, Garner contacted the victim of the crime to see if he had any knowledge of
Appellant's whereabouts. Once again, Garner's efforts led her nowhere because the victim did not
know where Appellant was living.

 Next, the State called William Hyman ("Hyman"), Deputy Director of the Houston County
Community Supervision office, to testify about the diligence used in attempting to arrest Appellant.
Hyman stated that his first effort was talking to Appellant's wife in April of 1998 and that he
continued to talk to her about Appellant's location throughout the period of time Hyman searched
for him. Hyman also testified that his office talked to the attorney general's office in Austin because
Appellant had a child support case pending against him. The attorney general's office gave Hyman
addresses it had on file that showed where Appellant might be located. One of those addresses was
in Bastrop County, and Hyman contacted the Bastrop County Sheriff's Department. Hyman also
contacted the Houston County Sheriff's Department. Hyman further testified that "on many
occasions," his office placed Appellant's picture in a "Crime Stoppers" advertisement in a newspaper
in Houston County. 

 Appellant next testified in his own defense. He told the court that he left Houston County
in 1998, before the State filed its motion to revoke. Appellant testified that he lived in a rented
house and that his name was on the lease. He further testified that the utilities were in his name and
that he had worked as a construction worker at a company called Steel Max for a little over two
years. Appellant stated that Steel Max was withholding social security and income taxes from the
paychecks he received.

 After living for two years in Austin, Appellant testified that he moved to Houston and was
living with his brother and his brother's fiancée. While living in Houston, Appellant stated that he
worked for a furniture company delivering furniture. Appellant told the court that the furniture
company also withheld social security, income taxes and child support from his paychecks.
Appellant further testified that during his stay in Houston, he was stopped for speeding outside of
Katy, Texas but was not arrested at that time. Appellant also testified that his license was expired
at the time of the traffic stop; however, he had not renewed his license since he was stopped for
speeding. Appellant stated that he had been living at his girlfriend's house in Houston for about a
year before he was arrested at her house one morning before he went to work. 

 On cross-examination, Appellant agreed with the State's assertion that Appellant had violated
a condition of his probation by not contacting the community supervision office to tell them that he
was moving out of Houston County. Appellant testified that although he knew that he should have
contacted the community supervision office to tell them that he was moving, he did not because
"before I could get in contact with them the warrant was already issued for my arrest - before I could
contact the probation department." Appellant further testified that although he considered turning
himself in on several occasions, he decided to go to Travis County in order to get a better paying job
to help support himself and his family. Appellant maintained that while he was living in Austin, he
was never contacted by the Austin police or the Travis County Sheriff's Department. 

 At the conclusion of the hearing, the trial judge overruled Appellant's motion to dismiss and
proceeded with the hearing on the State's motion to revoke. After the State's motion was heard, the
trial court granted the State's motion and, after giving Appellant credit for the time he served in
prison while on shock probation, sentenced Appellant to nine years and six months in the Texas
Department of Criminal Justice - Institutional Division. 

 Appellant now challenges the trial court's decision to revoke his probation, contending that
the State failed to exercise due diligence in procuring his arrest after the capias was issued and in
holding the hearing on the motion to revoke. 


Did the State Exercise Due Diligence in Executing the Capias?

 A trial court has the jurisdiction to hear a motion to revoke community supervision even after
the period of community supervision has expired. Prior v. State, 795 S.W.2d 179, 183 (Tex. Crim.
App. 1990). The reason for allowing a trial court's jurisdiction to continue beyond the expiration
of the defendant's probationary period is to prevent probation term violators from benefitting from
absconding. Peacock v. State, 77 S.W.3d 285, 288 (Tex. Crim. App. 2002). In order for the
jurisdiction of the court to extend beyond the expiration of the defendant's community supervision,
two events must take place: (1) a motion to revoke probation must be filed, and (2) a capias must be
issued. Id. at 287. The issue of lack of due diligence must be raised by the defendant before or
during the revocation hearing in order to preserve it for appellate review. Id. Once a defendant has
raised the issue, the burden rests with the State to show due diligence. Langston v. State, 800
S.W.2d 553, 555 (Tex. Crim. App. 1990). The State must prove by a preponderance of the evidence
that due diligence was used in executing the capias and in holding a hearing on the motion to revoke. 
Peacock, 77 S.W.3d at 288. In determining whether due diligence was exercised in apprehending
the defendant, the trial court may consider actions taken by the State before the motion to revoke was
filed and the capias issued. Bawcom v. State, 78 S.W.3d 360, 367 (Tex. Crim. App. 2002). 

 In the instant case, the motion to revoke was filed on February 9, 1998 and the capias was
issued on February 13, 1998. These events took place before Appellant's community supervision
period expired in February of 2002; therefore, the trial court had jurisdiction to revoke Appellant's
probation provided the State exercised due diligence in apprehending him. 

 Due diligence can be shown by proof of reasonable investigative efforts made to apprehend
the person sought. Peacock, 77 S.W.3d at 288. Requiring the State to show due diligence in
executing the capias helps a court determine whether the defendant cannot be found because he is
trying to elude capture or because no one is looking for him. Id. 

 The evidence adduced at the hearing on Appellant's motion to dismiss demonstrated that the
State, or others at the request of the State, made at least twelve different investigative efforts to
apprehend Appellant over a four-year period: (1) the district attorney's office made an inquiry to the
probation department, (2) the district attorney's office made an inquiry to the Texas Department of
Human Services, (3) the grand jury clerk contacted the Travis County Sheriff's Department about
apprehending Appellant, (4-6) the Travis County Sheriff's Department made three attempts to locate
Appellant, (7) the victim of the crime was contacted to see if he knew where Appellant could be
located, (8) Appellant's wife was contacted at different times during the period of time Appellant
could not be found to see if she knew where Appellant was living, (9) the probation department
made an inquiry to the attorney general's office, (10) the probation department contacted the Bastrop
County Sheriff's Department, (11) the probation department contacted the Houston County Sheriff's
Department, and (12) Appellant's picture was placed in a "Crime Stoppers" advertisement in a
Houston County newspaper "on many occasions."

 We hold that the efforts made by the State to apprehend Appellant after the capias was issued
constitute due diligence. Although four years elapsed before Appellant was arrested, the efforts
made by the State throughout those four years were reasonable investigative efforts. This is not a
case where the State only sent a letter to Appellant's last known address, only entered the capias into
the TCIC/NCIC, or knew Appellant's address but never tried to contact him. See Peacock, 77
S.W.3d at 288 (State failed to prove due diligence when it only entered the capias into TCIC and sent
a letter to the defendant's last known address); Harris v. State, 843 S.W.2d 34, 36 (Tex. Crim. App.
1992), overruled in part by Bawcom, 78 S.W.3d 360, 367 (State did not exercise due diligence when
it sent four letters to defendant's last known address and made a phone call to his mother);
Rodriguez v. State, 804 S.W.2d 516, 517-18 (Tex. Crim. App. 1991) (State did not prove due
diligence when the State knew the defendant's address and place of employment, yet did not attempt
to apprehend him). The State made efforts to apprehend Appellant based on the information the
State had obtained regarding his location. However, the State could not find Appellant because he
moved from Houston County to Austin and then to Houston, all without leaving a forwarding
address with the probation department. Appellant admitted that once he knew a warrant had been
issued for his arrest, he could have turned himself in. Instead, Appellant chose to run. Thus, this
case is similar to cases upholding a trial court's finding of due diligence because the delay in
apprehending a defendant was due to the defendant's actions. See Strickland v. State, 523 S.W.2d
250, 251 (Tex. Crim. App. 1975) (delay in apprehending defendant was due to the fact that
defendant's address at the time the motion to revoke was filed was entirely different from the address
he had reported to the probation department); Rodriguez v. State, 951 S.W.2d 199, 201-02 (Tex.
App.- Corpus Christi 1997, no pet.) (delay in apprehending defendant was explained by showing
that defendant provided probation officer with six different addresses, none of which were in the city
where he was residing).

 In Peacock, the Court of Criminal Appeals reversed the court of appeals's ruling upholding
a finding of due diligence where the State only entered the capias into TCIC and sent a letter to the
defendant's last known address. Peacock, 77 S.W.3d at 289. The Court stated in dicta that "[j]ust
as the probationer should not benefit from hiding, the State should not benefit by doing nothing
meaningful to execute a capias, i.e., if a probationer is not being sought, there is no reason for the
court to have continuing jurisdiction." Id. In the instant case, although the State conducted
reasonable investigative efforts, Appellant managed to elude those efforts until he was finally
arrested. Therefore, Appellant should not benefit from eluding the State's meaningful efforts to
apprehend him.

 The judgment of the trial court is affirmed.

 JAMES T. WORTHEN 

 Chief Justice



Opinion delivered January 22, 2003.

Panel consisted of Worthen, C.J. and Griffith, J.














(DO NOT PUBLISH)















1. Section 3g(b) of article 42.12 of the Texas Code of Criminal Procedure allows a trial court to order a
defendant confined to the Institutional Division of the Texas Department of Criminal Justice for a period of not less
than 60 days and not more than 120 days. Tex. Code Crim. Proc. Ann. art. 42.12, § 3g(b) (Vernon 2002). After
the defendant has served 60 days in prison, the sentencing judge, on his own motion or on motion of the defendant,
may order the defendant released to community supervision. Id. In any case where a defendant has been sentenced
pursuant to this section, the defendant must be released to community supervision after he has served 120 days. Id.
2. We cannot glean from the record the exact date of Appellant's arrest because the only evidence of any
date is "April of 2002."
3. The State has the burden to show by a preponderance of the evidence that due diligence was used in
executing the capias and in holding the hearing on the motion to revoke. Rodriguez v. State, 804 S.W.2d 516, 517
(Tex. Crim. App. 1991).