NO. 12-02-00162-CR



IN THE COURT OF APPEALS



TWELFTH COURT OF APPEALS DISTRICT


 

TYLER, TEXAS


 


SYLVIA A. SIMS,
§
 APPEAL FROM THE 145TH

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 NACOGDOCHES COUNTY, TEXAS







MEMORANDUM OPINION


 Sylvia A. Sims ("Appellant") pleaded guilty to the offense of securing execution of a
document by deception and was sentenced to six years of imprisonment, probated for six years. Near
the end of Appellant's probationary period, the State moved to revoke Appellant's probation and the
trial court issued a capias for Appellant's arrest. In one issue, Appellant contends that the trial court
abused its discretion in revoking her probation because the State failed to exercise due diligence in
procuring her arrest. We affirm.


Background

 On August 22, 1994, Appellant pleaded guilty to securing execution of a document by
deception and was sentenced to six years of imprisonment, probated for six years. On July 31, 2000,
the State moved to revoke Appellant's probation, alleging that she violated the terms of her
probation by failing to (1) pay a $35.00 probation fee, (2) pay her court appointed attorney's fee, (3)
pay restitution, and (4) report to her probation officer in person during the first five working days
of each month. On that same date, the trial court signed an order directing the district clerk to issue
a capias for Appellant's arrest. The capias was not executed until Appellant's arrest on or about
February 5, 2002, approximately eighteen months after the capias was issued and Appellant's 
probationary period expired. (1) 

 On April 10, 2002, Appellant filed a "Motion to Dismiss State's Motion to Revoke Probation
and Defendant's Request for Discharge From Probation," contending that the State failed to exercise
due diligence in apprehending Appellant and in hearing and determining the allegations in the State's
motion. The trial court heard both motions simultaneously on April 17, 2002. The State called Mike
Johnson ("Johnson"), Appellant's probation officer, to testify about Appellant's failure to comply
with her probation requirements and the efforts the State made in attempting to apprehend
Appellant. (2) Johnson testified that Appellant was doing well as a probationer until the beginning of
2000, when she failed to report as required. He also testified that after Appellant failed to report in
the first week of February he sent a letter to Appellant's last known address, informing her that she
needed to report by February 18. Johnson went to Appellant's house on February 9, but was unable
to make contact with Appellant. On February 18, Appellant reported to Johnson pursuant to the
instructions in his letter dated February 8.

 Johnson told the trial court that Appellant reported on March 7 but failed to report in April. 
He also testified that Appellant did not report at the required time in May; however, he saw
Appellant on May 15 and she told him that she was having trouble reporting because both she and
her daughter were having health problems. At that time, Johnson told her that he sympathized with
her but even though she was going through a rough time, she still needed to report.

 Appellant failed to report to Johnson in both June and July, and on July 31, the State filed
its motion to revoke Appellant's probation. After Appellant did not report in July, Johnson called
Appellant's home and spoke with her mother, telling her to make sure that Appellant contacted him
as soon as possible. Appellant never called Johnson back. On August 8, Johnson sent another letter
to Appellant's last known address, again asking Appellant to contact him. Johnson went to
Appellant's home on August 24 and 28 in an attempt to locate Appellant; however, she was nowhere
to be found. On September 25 and again on October 23, Johnson made fruitless attempts to locate
Appellant at her house. Johnson called Appellant's residence on October 25 and spoke to her
mother. During that conversation, Appellant's mother told Johnson that she did not know where
Appellant could be found. After this conversation, Johnson determined that Appellant was an
absconder and turned Appellant's file over to Lonnie Burns ("Burns"), the Nacogdoches County
absconder officer.

 Burns testified that he first received the case on October 24, 2000. On November 13, after
waiting three to four weeks for the sheriff's office to enter the capias into the TCIC/NCIC database,
Burns checked the database and found that the capias had been entered. In February of 2001, Burns
ran a driver's license check on Appellant. This check demonstrated that Appellant still had her
Nacogdoches address as the address on her driver's license. On May 14, Burns ran a "TCI credit
check" on Appellant, which showed an address for Appellant in Houston. That same day, Burns
prepared an "apprehension request" and delivered it to the Warrants Division of the Nacogdoches
County Sheriff's Office for transmittal to the Harris County Sheriff's Office and the Houston Police
Department. Burns told the court that the departmental policy required him to transmit the
"apprehension request" to law enforcement agencies outside of Nacogdoches County.

 In August, Burns ran another driver's license check and found the same Nacogdoches address
listed as Appellant's residence. In November, Burns performed a "warrant check" to determine if
the warrant was still entered in TCIC/NCIC. In February of 2002, Burns received a call from the
Nacogdoches County warrants officer that Appellant had been arrested on his warrant in Conroe,
Texas.

 When Appellant testified, she could not remember the last time she spoke with her probation
officer. She told the court that she could not report because her daughter was sick with leukemia and
was hospitalized in Houston. Appellant testified that she was staying with a cousin in Houston and
that in January of 2001, she had written a letter to Johnson, telling him that she was trying to relocate
her probation to Harris County. Appellant also testified that in that same month, she appeared in
court in Nacogdoches County to prove up a divorce and that she had also filled out change of address
forms at the post office. 

 At the conclusion of the hearing, the trial judge overruled Appellant's motion to dismiss and
granted the State's motion. After giving Appellant credit for "back time," the judge sentenced
Appellant to two years of imprisonment. 

 Appellant now challenges the trial court's decision to revoke her probation, contending that
the State failed to exercise due diligence in procuring her arrest after the capias was issued and in
holding the hearing on the motion to revoke. 


Did the State Exercise Due Diligence in Executing the Capias?

 A trial court has jurisdiction to hear a motion to revoke community supervision even after
the period of community supervision has expired. Prior v. State, 795 S.W.2d 179, 183 (Tex. Crim.
App. 1990). The reason for allowing a trial court's jurisdiction to continue beyond the expiration
of the defendant's probationary period is to prevent probation term violators from benefitting from
absconding. Peacock v. State, 77 S.W.3d 285, 288 (Tex. Crim. App. 2002). In order for the
jurisdiction of the court to extend beyond the expiration of the defendant's community supervision,
two events must take place: (1) a motion to revoke probation must be filed, and (2) a capias must be
issued. Id. at 287. The issue of lack of due diligence must be raised by the defendant before or
during the revocation hearing in order to preserve it for appellate review. Id. Once a defendant has
raised the issue, the burden rests with the State to show due diligence. Langston v. State, 800
S.W.2d 553, 555 (Tex. Crim. App. 1990). The State must prove by a preponderance of the evidence
that due diligence was used in executing the capias and in holding a hearing on the motion to revoke. 
Peacock, 77 S.W.3d at 288. In determining whether due diligence was exercised in apprehending
the defendant, the trial court may consider actions taken by the State before the motion to revoke was
filed and the capias issued. Bawcom v. State, 78 S.W.3d 360, 367 (Tex. Crim. App. 2002). Due
diligence can be shown by proof of reasonable investigative efforts made to apprehend the person
sought. Peacock, 77 S.W.3d at 288. Requiring the State to show due diligence in executing the
capias helps a court determine whether the defendant cannot be found because he is trying to elude
capture or because no one is looking for him. Id. 

 In the instant case, both parties agree that the motion to revoke was filed and the capias was
issued on July 31, 2000. These events took place before the expiration of Appellant's community
supervision period on August 22; therefore, the trial court had jurisdiction to revoke Appellant's
probation provided the State exercised due diligence in apprehending her. 

 The evidence adduced at the hearing on Appellant's motion to dismiss demonstrated that the
State, or others at the request of the State, made at least fourteen different investigative efforts to
apprehend Appellant once she stopped reporting to her probation officer: (1) Johnson's February 8,
2000 letter requiring Appellant to report by February 18, (2) a field visit to Appellant's home on
February 9, (3) a field visit to Appellant's home in May, (4) Johnson's phone call in July to
Appellant's mother inquiring as to Appellant's location, (5) a letter sent on August 8 to Appellant 
asking her to contact Johnson, (6) a field visit to Appellant's home on August 24, (7) a field visit to
Appellant's home on August 28, (8) a field visit to Appellant's home on September 25, (9) a field
visit to Appellant's home on October 23, (10) a phone call to Appellant's home and a conversation
with Appellant's mother on October 24, (11) a driver's license check by Burns in February of 2001,
(12) a "TCI credit check" performed by Burns on May 14, (13) an "apprehension request" made by
Burns and transmitted to the Harris County Sheriff's Office and the Houston Police Department, and
(14) another driver's license check in August.

 We hold that the efforts made by the State to apprehend Appellant before and after the capias
was issued constitute due diligence. Although eighteen months elapsed before Appellant was
arrested, the efforts made by the State were reasonable investigative efforts. This is not a case where
the State only sent a letter to Appellant's last known address, only entered the capias into the
TCIC/NCIC, or knew Appellant's address but never tried to contact him. See Peacock, 77 S.W.3d
at 288 (State failed to prove due diligence when it only entered the capias into TCIC and sent a letter
to the defendant's last known address); Harris v. State, 843 S.W.2d 34, 36 (Tex. Crim. App. 1992),
overruled in part by Bawcom, 78 S.W.3d 360, 367 (State did not exercise due diligence when it sent
four letters to defendant's last known address and made a phone call to his mother); Rodriguez v.
State, 804 S.W.2d 516, 517-18 (Tex. Crim. App. 1991) (State did not prove due diligence when the
State knew the defendant's address and place of employment, yet did not attempt to apprehend him). 
The State made efforts to apprehend Appellant based on the information the State had obtained
regarding her location. However, the State could not find Appellant because she moved from
Nacogdoches County to Houston, all without leaving a forwarding address with the probation
department. Thus, this case is similar to cases upholding a trial court's finding of due diligence
because the delay in apprehending a defendant was due to the defendant's actions. See Strickland
v. State, 523 S.W.2d 250, 251 (Tex. Crim. App. 1975) (delay in apprehending defendant was due
to the fact that defendant's address at the time the motion to revoke was filed was entirely different
from the address he had reported to the probation department); Rodriguez v. State, 951 S.W.2d 199,
201-02 (Tex. App.- Corpus Christi 1997, no pet.) (delay in apprehending defendant was explained
by showing that defendant provided probation officer with six different addresses, none of which
were in the city where he was residing).

 In Peacock, the Court of Criminal Appeals reversed the court of appeals ruling upholding
a finding of due diligence where the State only entered the capias into TCIC and sent a letter to the
defendant's last known address. Peacock, 77 S.W.3d at 289. The Court stated in dicta that "[j]ust
as the probationer should not benefit from hiding, the State should not benefit by doing nothing
meaningful to execute a capias, i.e., if a probationer is not being sought, there is no reason for the
court to have continuing jurisdiction." Id. In the instant case, although the State conducted
reasonable investigative efforts, Appellant managed to elude those efforts until she was finally
arrested. Therefore, Appellant should not benefit from eluding the State's meaningful efforts to
apprehend her.


Conclusion

 The State conducted reasonable investigative measures to apprehend Appellant both before
and after the motion to revoke was filed and the capias was issued; therefore, the State exercised due
diligence in apprehending Appellant. Accordingly, the judgment of the trial court is affirmed.


 JAMES T. WORTHEN 

 Chief Justice



Opinion delivered March 5, 2003.

Panel consisted of Worthen, C.J. and Griffith, J.




(DO NOT PUBLISH)


1. The capias is not included in the appellate record; however, the parties agree that the capias was issued on
July 31, 2000, the day the State filed its motion to revoke Appellant's probation.
2. The State has the burden to show by a preponderance of the evidence that due diligence was used in
executing the capias and in holding the hearing on the motion to revoke. Rodriguez v. State, 804 S.W.2d 516, 517
(Tex. Crim. App. 1991).