**James David PEACOCK, Appellant,**

v.

**The STATE of Texas.**

**No. 1750–00.**

Court of Criminal Appeals of Texas.

May 29, 2002.

Gregg Hill, Hillsboro & Brian W. Wice, Houston, for Appellant.

Dan V. Dent, DA, Hillsboro, Matthew Paul, State's Atty., Austin, for State.

## OPINION

HERVEY, J., delivered the opinion of the Court in which MEYERS, PRICE, JOHNSON, HOLCOMB and COCHRAN, JJ., joined.

The appellant was convicted of felony bail jumping on July 1, 1997. He was sentenced to a term of two years confinement in the Texas Department of Criminal Justice Institutional Division, probated for the same period. After the appellant tested positive for drug use, failed to report in person, failed to pay court costs and other fees, failed to submit to drug testing, failed to find work or obtain a drivers license, and failed to attend AA meetings, the State filed a petition for revocation of probated sentence on April 20, 1998. A capias for the appellant's arrest was also filed on April 20, 1998. The appellant was arrested on September 26, 1999, seventeen months after the capias was issued and nearly three months after his probationary period expired. At a trial court hearing on October 22, 1999, the appellant's motion to dismiss based on a lack of due diligence in arresting him was denied, and his probation was revoked. He was sentenced to two years in the Texas Department of Criminal Justice. The Tenth Court of Appeals upheld the trial court's decision.

*Peacock v. State,* 27 S.W.3d 657 (Tex.App.-Waco 2000, pet. granted).

We granted the appellant's petition for discretionary review to determine whether the State exercised due diligence in executing the capias that resulted from the petition to revoke the appellant's probation. Having determined that the State was not diligent in apprehending him, we will reverse.

At the hearing on the appellant's motion to dismiss, which was held immediately before the revocation hearing, evidence was presented through the testimony of two witnesses, the appellant's probation officer, Deborah Pruitt, and a Hill County Sheriff's deputy, Mike Cook. The probation officer testified that on August 6, 1997, the appellant was permitted to move from Whitney, Texas, to Fort Worth. In October, he reported to her that he was living at 3608 Lafayette Street in Fort Worth, and that he would be maintaining his mailing address in Whitney P.O. Box 561, Whitney, Texas. The probation office had been notified by the appellant that his mother, who lived in Whitney, could be used as a contact person. The probation office had both the address and phone number of the appellant's mother. In fact, in December 1997, the appellant was contacted by the probation office through a telephone call to his mother. In response to that contact, the appellant reported to the probation office where he took and failed a drug test. After the December contact, Ms. Pruitt did not hear from the appellant again. In April 1998, a petition for revocation of probation was filed, and on April 20, 1998, a capias was issued for the appellant's arrest. The probation office made no attempt to contact the appellant after the petition for revocation of probation was filed. The Sheriff's Department was notified of the appellant's "absconder" status and the matter was thereafter in its hands.

Hill County Sheriff's deputy Mike Cook testified as to the actions taken by the Sheriff's Department to locate the appellant and execute a return on the capias. He testified from facts appearing on a Warrant Information Card that was kept as part of the Department's record of the case. Deputy Cook stated that on April 22, 1998, the capias was entered into the TCIC, a statewide criminal information database used by law enforcement agencies, and on the same date a Department letter was sent to the appellant's last known mailing address—the post office box in Whitney. No other attempts were made by the Sheriff's Department to contact the appellant or otherwise execute a return on the capias until the time of his eventual arrest.

▪ A trial court can hear a motion to revoke community supervision even after the period of community supervision has expired. To hold otherwise would reward an absconder who is able to elude capture until the expiration of his probationary period. *See Prior v. State,* 795 S.W.2d 179, 183 (Tex.Crim.App.1990). However, in order for the jurisdiction of the trial court to extend beyond the expiration of the defendant's community supervision, two things must first occur: 1) a motion to revoke probation must be filed; and 2) a capias must be issued. "[A]s long as both a motion alleging a violation of probationary terms is filed and a capias or arrest warrant is issued prior to the expiration of the term, followed by due diligence to apprehend the probationer and to hear and determine the allegations in the motion" the trial court's jurisdiction continues. *Rodriguez v. State,* 804 S.W.2d 516, 517 (Tex.Crim.App.1991) (quoting *Prior v. State,* 795 S.W.2d at 184). The issue of lack of due diligence must be raised by the

appellant before or during the revocation hearing in order to preserve it for appellate review. *Hardman v. State*, 614 S.W.2d 123, 127 (Tex.Crim.App.1981). "Once a defendant raises the issue, the State has the burden to show due diligence." *Langston v. State*, 800 S.W.2d 553, 555 (Tex.Crim.App.1990). The burden on the State to show due diligence was used in executing the capias and in holding a hearing on the motion to revoke is by a preponderance of the evidence. *See Burch v. State*, 821 S.W.2d 385, 387 (Tex.App.-Waco 1991) (relying on *Shaw v. State*, 622 S.W.2d 862, 863 (Tex.Crim.App. [Panel Op.] 1981), which requires the State to prove every element in a revocation of probation proceeding by a preponderance of the evidence, and applying the same standard to a due diligence determination).

■ In this case the filing of the petition for revocation of probation on April 20, 1998, and the issuance of the capias for the appellant's arrest on the same date were completed before the expiration of the appellant's community supervision period. The trial court would have had jurisdiction at the time of the hearing provided the State exercised due diligence. There were only two actions taken by the State between the time the revocation petition was filed and the capias was issued, and the time the appellant was eventually arrested. The capias was entered into the TCIC, and a letter was sent to the appellant's last known mailing address. It has already been determined by this court that the entering of the capias into the TCIC alone is not sufficient to show due diligence on the part of the State in apprehending the appellant. *See Harris v. State*, 843 S.W.2d 34, 35–36 (Tex.Crim. App.1992). It has also been determined by the Austin Court of Appeals that a letter sent to the appellant's last known address is likewise inadequate to show due diligence on the part of the State. *See Hunter v. State*, 820 S.W.2d 5, 7 (Tex. App.-Austin 1991, no pet.).

The Waco Court of Appeals points out the lack of "evidence establishing that [the appellant] had in fact lived at an address known by the State at all times." *Peacock v. State*, 27 S.W.3d 657, 661 (Tex.App.-Waco 2000). Here the letter was sent to a post office box where the appellant was not likely to be physically located. Due diligence can be shown by proof of reasonable investigative efforts made to apprehend the person sought. Based on the information in the State's possession, in this case it would have been reasonable for the Fort Worth address to be investigated, for the appellant's mother to be contacted, and for an inquiry made to the post office as to whether the appellant was still using his reported post office box address. *Cf. Harris v. State*, 843 S.W.2d at 36 (entering capias on TCIC and no explanation of State's inaction despite knowing appellant's address and contact person does not show diligence by the State); *Rodriguez v. State*, 804 S.W.2d at 518 (nothing offered to show diligence by the State where address and place of employment were known); *Langston v. State*, 800 S.W.2d at 555 (no evidence of diligence by the State even though address was known).

■ The reason for allowing jurisdiction to revoke probation to continue beyond the termination of the probationary period is to prevent probation term violators from benefitting from absconding. *See Prior v. State*, 795 S.W.2d at 183. The probation office in this case classified the appellant as an "absconder" without differentiating between probationers who have simply not walked through the front door and those taking furtive actions to hide from the

law.[1] Requiring the State to show due diligence in executing the capias helps a court determine whether the probationer cannot be found because he is trying to elude capture or because no one is looking for him. Just as the probationer should not benefit from hiding, the State should not benefit by doing nothing meaningful to execute a capias, i.e., if a probationer is not being sought, there is no reason for the court to have continuing jurisdiction.

While it has been suggested by this court, albeit in a concurring opinions, that the due diligence defense has no statutory basis [2] and was "created out of thin air," [3] we do not find it prudent to overturn the precedential body of law from this court which has been followed by the various lower courts for nearly forty years. While there may be no express statutory authority for the due diligence defense, neither is there an express statutory authority for continuing jurisdiction for a trial court in a probation revocation. *Prior* points out that there is nothing that statutorily prohibits this jurisdiction to continue beyond the expiration of a probationary period.[4] The logic that reasons in favor of not allowing an absconding probationer to benefit from his cunning would also seem to dictate a determination that he is actually an absconder. From this logic flows the requirement of due diligence.

The State is still required to prove due diligence by a preponderance of the evidence when the issue is raised by the probationer. In this case the issue was properly raised by the appellant's motion to dismiss. However, the actions taken by the State after the issuance of the capias do not demonstrate due diligence in its execution. For these reasons we reverse the judgment of the Court of Appeals and remand this cause to the trial court for proceedings consistent with this opinion.

KELLER, P.J., filed a dissenting opinion in which KEASLER, J., joined.

WOMACK, J., joined Part I of the dissent.

KELLER, P.J., dissenting in which KEASLER, J., joins and WOMACK, J., joins Part I.

Appellant failed to report to his community supervision officer. A motion to revoke was filed and a capias was issued before appellant's community supervision expired, but appellant was not arrested until sometime after his community supervision expired. The State's only attempt to contact appellant, before his arrest, was by mail to his last known mailing address. The question presented is whether the State should be barred from revoking appellant's community supervision on the ground that the State failed to exercise due diligence in apprehending appellant. I would answer that question "no" because appellant's own conduct impeded the State's efforts to contact him.

I.

Whether a due diligence requirement exists and how that requirement manifests itself depends in part upon the nature of

---

1. Abscond means "[t]o depart secretly or suddenly, esp. to avoid service of process; to conceal oneself." BLACK'S LAW DICTIONARY 6 (7th ed.1999).

2. *See Rodriquez v. State,* 992 S.W.2d 483, 484 (Tex.Crim.App.1999) (Mansfield, J., concurring).

3. *See Connolly v. State,* 983 S.W.2d 738, 741 (Tex.Crim.App.1999) (Keller, J., concurring).

4. *See Prior v. State,* 795 S.W.2d at 182 (following the analysis expressed in a South Carolina case, *Lovell v. State,* 223 S.C. 112, 74 S.E.2d 570, 572 (1953), whose logic fittingly applies to Texas revocation law).

the State's authority to arrest a person who has violated the conditions of community supervision. The community supervision statute provides, in relevant part: "At any time during the period of community supervision the judge may issue a warrant for violation of any of the conditions of the community supervision and cause the defendant to be arrested. Any supervision officer, police officer or other officer with power of arrest may arrest such a defendant with or without a warrant upon the order of the judge to be noted on the docket of the court." [1] One issue raised by the statutory language is whether the trial court has jurisdiction to revoke community supervision for someone who is *arrested* after the community supervision period has ended. Does the phrase "cause the defendant to be arrested" mean that the arrest must actually have occurred within the supervision period, or does it simply mean that the judge must have issued the order that later causes the arrest?

Without citing authority, *Stover* held that the trial court did have jurisdiction over a defendant arrested outside the community supervision [2] period *provided* that the following occurred *within* the community supervision period:

1. filing of the motion to revoke,

2. court action authorizing arrest (issuance of a capias or arrest warrant), and

3. a diligent effort to apprehend the defendant and to hear and determine the claimed violation (i.e. "due diligence"). [3]

In *Prior*, we reiterated this position and applied it to deferred adjudication. [4] In arriving at our conclusion, we relied upon *Stover* and two other cases, *Fennell* [5] and *Leija*. [6][7] *Leija*, in turn, relied solely upon *Fennell*. [8] There is, however, a factual difference between *Prior* (and *Stover*), on the one hand, and *Leija* and *Fennell* on the other. In both *Leija* and *Fennell*, the defendant had been arrested within the community supervision period but revocation did not occur until after the community supervision period had expired, [9] but in *Prior*, the arrest itself occurred after the community supervision period had expired. [10]

*Prior* did not recognize this factual difference, but the opinion did quote extensively from *Fennell* in connection with *Fennell's* reliance upon two out-of-state cases. Before discussing the out-of-state cases, *Fennell* cited as relevant to its decision that "the violation occurred and the warrant of arrest for violation of the terms of probation issued long prior to the expiration" of the community supervision period. [11] After reciting those facts, *Fennell* proceeded to rely upon opinions from the Supreme Courts of South Carolina and Florida, which construed statutes similar

1. TEX. CODE CRIM. PROC., Art. 42.12, § 21(b).

2. At the time, community supervision was referred to as "probation."

3. *See Stover v. State*, 365 S.W.2d 808, 809 (Tex.Crim.App.1963).

4. *Prior v. State*, 795 S.W.2d 179, 184 (Tex. Crim.App.1990).

5. *Ex Parte Fennell*, 162 Tex.Crim. 286, 284 S.W.2d 727 (App.1955).

6. *Leija v. State*, 167 Tex.Crim. 300, 320 S.W.2d 3 (App.1958).

7. *Prior*, 795 S.W.2d at 183.

8. *Leija*, 320 S.W.2d at 4.

9. *Leija*, 320 S.W.2d at 4; *Fennell*, 284 S.W.2d at 727 728.

10. 795 S.W.2d at 180.

11. *Fennell*, 284 S.W.2d at 728.

to the one at issue.[12] In *Lovell*, the Supreme Court of South Carolina found that the South Carolina statute contained no language "expressly requiring that the order of revocation be made within the probationary period" and further found that implying such a requirement would lead to adverse results: "Such a construction would enable one who has violated the terms of his probation to avoid the execution of his sentence by escaping from the custody of the probation officer and remaining in a foreign jurisdiction or in concealment until the period of probation has expired."[13] In *Coker*, the Florida Supreme Court commented about the Florida community supervision statute that "there is nothing in the quoted statute requiring that the order of revocation be executed within the probation period. *All that is required during said period is that the warrant be issued.*"[14]

Although *Fennell*, *Lovell*, and *Coker* focused expressly on the ability to carry on revocation proceedings after the community supervision period has expired, they all at least implied that arrest within the community supervision period was not a prerequisite for the attachment of jurisdiction. *Fennell* cited only commission of the violation and issuance of the warrant as the relevant facts while *Coker* expressly stated that issuance of the warrant was all that was required. *Lovell's* concern that the offender might secrete himself and elude capture likewise indicates that the offender did not have to be arrested within the community supervision period.

Nowhere in *Fennell*, *Lovell*, and *Coker* was there a requirement of due diligence.

While *Lovell* did articulate a concern that an offender may elude authorities, that concern simply reinforced a decision to interpret the statute in conformity with its express language and hold that issuance of a warrant within the community supervision period was sufficient to confer jurisdiction. And while *Fennell's* quotation from *Lovell* included the articulated concern about an offender escaping and eluding capture, *Fennell* also quoted from *Coker*, which articulated no such concern. And *Prior* quoted *Fennell's* discussion of both *Lovell* and *Coker*. Hence, the statutory construction conducted in *Fennell* and *Prior* provide no basis for a due diligence requirement.

## II.

Absent a statutory basis, the diligence requirement must stem from general principles of equity. We have before recognized the existence of an equitable doctrine in criminal cases—laches, stemming from a delay in filing an application for writ of habeas corpus.[15] That due diligence is an equitable doctrine is reinforced by our holding that it is not a jurisdictional requirement—which it would be if it were included in the statutory requisites for revocation—but the absence of due diligence is simply a plea in bar or defense, which must be raised by the defendant at the plea hearing, or else be forfeited.[16]

As an equitable doctrine, the due diligence doctrine is subject to equity's limitations. One of those limitations is the doctrine of "clean hands": a party cannot obtain equitable relief if the party's own

---

12. *Id.* at 728–729.

13. *Fennell*, 284 S.W.2d at 728 (quoting *Lovell v. State*, 223 S.C. 112, 74 S.E.2d 570, 572)

14. *Id.* at 729 (quoting *State ex. rel. Lee v. Coker*, 80 So.2d 462, 463)(emphasis added).

15. *Ex Parte Carrio*, 992 S.W.2d 486, 488 (Tex. Crim.App.1999).

16. *Brecheisen v. State*, 4 S.W.3d 761, 763 (Tex.Crim.App.1999).

wrongful conduct is partially responsible for the events at issue.[17] Here, appellant's own conduct is partially responsible for the failure of law enforcement to quickly apprehend him: appellant failed to report as required and did not respond to mail sent by authorities to his last known mailing address. Under the circumstances, I would hold that appellant was barred by his unclean hands from asserting an equitable defense based upon the State's failure to exercise due diligence in apprehending him.

I must respectfully dissent.

---

17. *See McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995); *Olmstead v. United States*, .277 U.S. 438, 483–484, 48 S.Ct. 564, 72 L.Ed. 944 (1928)(Brandeis, J. dissenting)(regarding un-

clean hands: "The court's aid is denied only when he who seeks it has violated the law in connection with the very transaction as to which he seeks legal redress").