# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00513-CR

**Barry Bentley Miller, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT
### NO. 34,737, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING

After a plea of guilty on December 12, 1986, appellant Barry Bentley Miller was placed on community supervision for aggravated assault, which was subsequently revoked. Miller now appeals from the revocation order. He raises two issues contending that the State failed to prove, and the trial court abused its discretion in finding, that due diligence was used to apprehend him before the expiration of his probationary period. We will affirm the order of the trial court.

## BACKGROUND

On December 12, 1986, Miller was placed on deferred adjudication community supervision for a term of seven years. The trial court later modified the terms and conditions of his community supervision and extended his probationary period until May 29, 2001.[1] A capias and the final motion to revoke in this case were filed February 16, 1999. The capias was executed by arresting Miller on June 29, 2001, approximately 29 days after his probationary period expired and more than two years after the capias was issued.

---

[1] The record indicates that the State filed motions to revoke his probation and amendments to those motions in 1992, 1993, 1994, and 1995. In 1996, a judgment adjudicating guilt was entered based on the original 1986 conviction, and Miller was sentenced to five years, probated for that same period, and ordered to a substance abuse felony punishment facility. He was released from the facility in 1997.

At a trial court hearing on July 19, 2001, Miller filed a motion to dismiss arguing that the State failed to use due diligence in arresting him. E. Lynn Draper, a resident of Ohio, testified on behalf of Miller. Draper testified that he owned a 400-acre ranch in Lampasas on which two houses, two barns, and another residence in which Miller lived were located. Draper further testified that Miller had lived there for three years, and he spoke to Miller once each month by phone. John Mahowald, a resident of Minnesota, also testified on Miller=s behalf. Mahowald testified that he had known Miller about two years, had visited Miller about four times while in Texas on vacation, and had also spoken to him on the phone. Joseph Sturgeon, Miller=s probation officer, and John Kucker, an employee of the Bell County Community Supervision and Corrections Department working in the absconder apprehension unit, testified on behalf of the State. Sturgeon and Kucker testified regarding the investigative efforts made by the State to apprehend Miller. The trial court denied Miller=s motion to dismiss, revoked his community supervision, and sentenced him to five years in prison. Miller now appeals to this Court.

**DISCUSSION**

A trial court has jurisdiction to hear a motion to revoke community supervision even after the probationary period has expired; to hold otherwise would reward an absconder who is able to elude capture until the expiration of his probationary period. *Peacock v. State*, 77 S.W.3d 285, 287 (Tex. Crim. App. 2002). A trial court=s jurisdiction extends beyond the expiration of the defendant=s community supervision if a motion to revoke is filed and a capias has been issued. *Id.* A>[A]s long as both a motion alleging a violation of probationary terms is filed and a capias or arrest warrant is issued prior to the expiration of the term, followed by due diligence to apprehend the probationer and to hear and determine the allegations in the motion= the trial court=s jurisdiction continues.@ *Id.* (quoting *Rodriguez v. State*, 804 S.W.2d 516, 517 (Tex. Crim. App. 1991)). Miller raised the issue of lack of due diligence during the revocation hearing; accordingly, the issue is preserved for appellate review, and the State has the burden to show by a preponderance of the evidence due diligence was used in executing the capias and in holding the hearing on the motion to revoke. *Id.*, at 287-88. In this case, the motion to revoke Miller=s community supervision was filed on February 16, 1999, and the capias was issued on that same date. Both events were completed before the expiration of Miller=s probationary period. Accordingly, the trial court would have had jurisdiction at the time of the revocation hearing *provided* the State exercised due diligence in apprehending Miller.

In two issues, Miller contends that the State failed to prove, and the trial court abused its discretion in finding, that due diligence was used to apprehend him before the expiration of his probationary period. Requiring the State to show due diligence Ahelps a court to determine whether the probationer cannot be found because he is trying to elude capture or because no one is looking for him.@ *Id.*, at 289.

4

ADue diligence can be shown by proof of reasonable investigative efforts made to apprehend the person sought.@ *Id*., at 288. Miller contends that the record shows that the State did not exercise due diligence because he established that he lived at the Lampasas address which he had provided the community supervision and corrections department during his entire probationary period; there was no evidence that his name and information had been entered into the TCIC or NCIC network;[2] there was no evidence that he actively avoided law enforcement officials; and there was evidence that he could have been apprehended by tracking him in connection with charges filed against him in Burnet County.

---

[2] TCIC and NCIC are criminal information databases used by law enforcement agencies.

The record shows that Miller was informed by his probation officer, Sturgeon, on February 19, 1999, that a capias had been filed.[3] In April of 1999, Sturgeon sent a letter to Miller=s Lampasas address informing him that the capias had been issued, along with a warrant for his arrest, and requesting him to report to the probation office. This letter was never returned; it is presumed to have been delivered. Sturgeon also contacted Lisa Whitehead at the Burnet County courthouse in April regarding charges pending against Miller in that county and requested a copy of the complaint. In February or March of 2000, Kucker, on behalf of the absconder apprehension unit, began searching Miller=s probation file and the internet to obtain an address for Miller. In June of 2000, Kucker contacted Miller=s wife, who was not then living with Miller, and she informed Kucker that Miller was living at the Lampasas address. In July, Kucker drove to the Lampasas address and spoke to a man named H. R. Keelin who lived in one of the houses on the property. Keelin informed Kucker that he did not know Miller. Kucker then contacted Miller=s brother. Miller=s brother informed Kucker that he and Miller had had a Afalling out@ and he didn=t know where Miller was. Kucker asked Miller=s brother to call if he received any information regarding Miller; Kucker was never contacted. That same month, Kucker also contacted both the Lampasas Police Department and the Burnet County Sheriff=s Department and requested assistance in locating Miller; in addition, he contacted the local water department and appraisal district in an attempt to obtain an address for Miller, but was told by a representative from each office that they could not release that information. In December, Kucker again contacted Miller=s wife and spoke to her mother who informed Kucker that she

---

[3] Sturgeon testified that, although the capias and arrest warrant had been filed February 16, the arrest warrant had not yet been issued by February 19. As a result, he was not authorized to arrest Miller; accordingly, he informed him of the impending events.

did not know Miller=s address or phone number. He again went to the Lampasas address and failed to locate Miller. Finally, in April 2001, Kucker made his last visit to the Lampasas address and spoke to Miller=s wife who informed him that Miller was in Corpus Christi working on a job.

We conclude that the record supports the trial court=s conclusion that the State exercised due diligence in apprehending Miller. Miller contends that he lived at the same address during his entire probationary period and that there was no evidence that he Aactively@ avoided law enforcement officials. In support of his argument, he directs our attention to *Gutierrez v. State*, 46 S.W.3d 394 (Tex. App.CCorpus Christi 2001, pet. granted). In *Gutierrez*, the only actions taken by the State in attempting to apprehend the defendant were mailing a letter to his address and conducting a criminal history and warrant check. *Id*. at 397. The *Gutierrez* court considered cases in which the court of criminal appeals had found that the State did not exercise due diligence where a significant period of time elapsed between the filing of the motion to revoke or the expiration of the probation and the arrest. *Id*. at 396 (citing *Harris v. State*, 843 S.W.2d 34 (Tex. Crim. App. 1992)) (almost ten years between filing of motion to revoke and arrest and minimal efforts to apprehend); *Rodriguez v. State*, 840 S.W.2d 516 (Tex. Crim. App. 1991) (approximately two years between filing of motion to revoke and revocation of probation and one year between expiration of probation and revocation of probation; State knew person=s address and did nothing to apprehend); *Langston v. State*, 800 S.W.2d 553 (Tex. Crim. App. 1990) (eight months between filing of motion to revoke and arrest and over seven months between expiration of probation and arrest; State knew person=s address and no evidence he was hiding). In the present case, the State=s

7

actions involved considerably more than mailing a letter and a background check, as detailed above. Furthermore, although more than two years elapsed between the filing of the motion to revoke and the arrest, only 29 days elapsed between the expiration of Miller=s probationary period and his arrest. The record demonstrates that Miller ceased reporting to his probation officer, did not respond when informed by Sturgeon that a capias and arrest warrant would be issued, did not respond when he was sent a letter informing him that a capias and arrest warrant had been issued and requesting him to report, and was never located at his Lampasas address when Kucker visited, although others apparently could reach him there.[4]

Miller also contends that there is no evidence that his name and information were entered into the TCIC or NCIC network database; however, what he fails to state is that there was no evidence to the contrary. The record is silent on this issue. As this constitutes only one of many factors in determining whether the State exercised reasonable investigative efforts, we do not find this absence of proof dispositive.

Finally, Miller contends that there was evidence that he could have been apprehended by tracking him in connection with charges filed against him in Burnet County. Sturgeon=s testimony indicates that Miller was arrested and released on bond in January 1999, before the capias and motion to revoke were filed. Sturgeon called Lisa Whitehead at the Burnet County courthouse in January and again in April 1999. In April, he requested a copy of the complaint, but the record does not indicate anything further, including whether Miller made a court appearance at which the State would have had an opportunity to

---

[4] Both Draper and Mahowald testified that Miller was at the Lampasas address each time they visited. Both also testified that they spoke to him by phone and he was there each time they called. In addition, Draper testified that he was able to send Miller mail at the Lampasas address.

8

apprehend him. We do not find this determination dispositive in light of the other investigative efforts made by the State.

As demonstrated by the record, this is not a case where the State knew where Miller was and then did nothing; nor is this a case where the State offered no explanation for the delay in apprehending Miller. We conclude that the State presented sufficient evidence of reasonable investigative efforts and, therefore, satisfied its due diligence burden. Accordingly, the trial court did not abuse its discretion in revoking Miller=s probation.

## CONCLUSION

Having overruled Miller=s issues, we affirm the trial court=s order.

_____

Mack Kidd, Justice

Before Justices Kidd, Patterson and Puryear

Affirmed

Filed:   September 26, 2002

Do Not Publish

9