TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-01-00513-CR







Barry Bentley Miller, Appellant


v.


The State of Texas, Appellee








FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT

NO. 34,737, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING






 After a plea of guilty on December 12, 1986, appellant Barry Bentley Miller was
placed on community supervision for aggravated assault, which was subsequently revoked. Miller
now appeals from the revocation order. He raises two issues contending that the State failed to
prove, and the trial court abused its discretion in finding, that due diligence was used to apprehend
him before the expiration of his probationary period. We will affirm the order of the trial court.


BACKGROUND


 On December 12, 1986, Miller was placed on deferred adjudication community
supervision for a term of seven years. The trial court later modified the terms and conditions of his
community supervision and extended his probationary period until May 29, 2001. (1) A capias and the
final motion to revoke in this case were filed February 16, 1999. The capias was executed by
arresting Miller on June 29, 2001, approximately 29 days after his probationary period expired and
more than two years after the capias was issued.

 At a trial court hearing on July 19, 2001, Miller filed a motion to dismiss arguing that
the State failed to use due diligence in arresting him. E. Lynn Draper, a resident of Ohio, testified
on behalf of Miller. Draper testified that he owned a 400-acre ranch in Lampasas on which two
houses, two barns, and another residence in which Miller lived were located. Draper further testified
that Miller had lived there for three years, and he spoke to Miller once each month by phone. John
Mahowald, a resident of Minnesota, also testified on Miller's behalf. Mahowald testified that he had
known Miller about two years, had visited Miller about four times while in Texas on vacation, and
had also spoken to him on the phone. Joseph Sturgeon, Miller's probation officer, and John Kucker,
an employee of the Bell County Community Supervision and Corrections Department working in
the absconder apprehension unit, testified on behalf of the State. Sturgeon and Kucker testified
regarding the investigative efforts made by the State to apprehend Miller. The trial court denied
Miller's motion to dismiss, revoked his community supervision, and sentenced him to five years in
prison. Miller now appeals to this Court.


DISCUSSION


 A trial court has jurisdiction to hear a motion to revoke community supervision even
after the probationary period has expired; to hold otherwise would reward an absconder who is able
to elude capture until the expiration of his probationary period. Peacock v. State, 77 S.W.3d 285,
287 (Tex. Crim. App. 2002). A trial court's jurisdiction extends beyond the expiration of the
defendant's community supervision if a motion to revoke is filed and a capias has been issued. Id. 
"'[A]s long as both a motion alleging a violation of probationary terms is filed and a capias or arrest
warrant is issued prior to the expiration of the term, followed by due diligence to apprehend the
probationer and to hear and determine the allegations in the motion' the trial court's jurisdiction
continues." Id. (quoting Rodriguez v. State, 804 S.W.2d 516, 517 (Tex. Crim. App. 1991)). Miller
raised the issue of lack of due diligence during the revocation hearing; accordingly, the issue is
preserved for appellate review, and the State has the burden to show by a preponderance of the
evidence due diligence was used in executing the capias and in holding the hearing on the motion
to revoke. Id., at 287-88. In this case, the motion to revoke Miller's community supervision was
filed on February 16, 1999, and the capias was issued on that same date. Both events were
completed before the expiration of Miller's probationary period. Accordingly, the trial court would
have had jurisdiction at the time of the revocation hearing provided the State exercised due diligence
in apprehending Miller.

 In two issues, Miller contends that the State failed to prove, and the trial court abused
its discretion in finding, that due diligence was used to apprehend him before the expiration of his
probationary period. Requiring the State to show due diligence "helps a court to determine whether
the probationer cannot be found because he is trying to elude capture or because no one is looking
for him." Id., at 289. "Due diligence can be shown by proof of reasonable investigative efforts made
to apprehend the person sought." Id., at 288. Miller contends that the record shows that the State
did not exercise due diligence because he established that he lived at the Lampasas address which
he had provided the community supervision and corrections department during his entire
probationary period; there was no evidence that his name and information had been entered into the
TCIC or NCIC network; (2) there was no evidence that he actively avoided law enforcement officials;
and there was evidence that he could have been apprehended by tracking him in connection with
charges filed against him in Burnet County.

 The record shows that Miller was informed by his probation officer, Sturgeon, on
February 19, 1999, that a capias had been filed. (3) In April of 1999, Sturgeon sent a letter to Miller's
Lampasas address informing him that the capias had been issued, along with a warrant for his arrest,
and requesting him to report to the probation office. This letter was never returned; it is presumed
to have been delivered. Sturgeon also contacted Lisa Whitehead at the Burnet County courthouse
in April regarding charges pending against Miller in that county and requested a copy of the
complaint. In February or March of 2000, Kucker, on behalf of the absconder apprehension unit,
began searching Miller's probation file and the internet to obtain an address for Miller. In June of
2000, Kucker contacted Miller's wife, who was not then living with Miller, and she informed Kucker
that Miller was living at the Lampasas address. In July, Kucker drove to the Lampasas address and
spoke to a man named H. R. Keelin who lived in one of the houses on the property. Keelin informed
Kucker that he did not know Miller. Kucker then contacted Miller's brother. Miller's brother
informed Kucker that he and Miller had had a "falling out" and he didn't know where Miller was. 
Kucker asked Miller's brother to call if he received any information regarding Miller; Kucker was
never contacted. That same month, Kucker also contacted both the Lampasas Police Department
and the Burnet County Sheriff's Department and requested assistance in locating Miller; in addition,
he contacted the local water department and appraisal district in an attempt to obtain an address for
Miller, but was told by a representative from each office that they could not release that information. 
In December, Kucker again contacted Miller's wife and spoke to her mother who informed Kucker
that she did not know Miller's address or phone number. He again went to the Lampasas address
and failed to locate Miller. Finally, in April 2001, Kucker made his last visit to the Lampasas
address and spoke to Miller's wife who informed him that Miller was in Corpus Christi working on
a job.

 We conclude that the record supports the trial court's conclusion that the State
exercised due diligence in apprehending Miller. Miller contends that he lived at the same address
during his entire probationary period and that there was no evidence that he "actively" avoided law
enforcement officials. In support of his argument, he directs our attention to Gutierrez v. State, 46
S.W.3d 394 (Tex. App.--Corpus Christi 2001, pet. granted). In Gutierrez, the only actions taken
by the State in attempting to apprehend the defendant were mailing a letter to his address and
conducting a criminal history and warrant check. Id. at 397. The Gutierrez court considered cases
in which the court of criminal appeals had found that the State did not exercise due diligence where
a significant period of time elapsed between the filing of the motion to revoke or the expiration of
the probation and the arrest. Id. at 396 (citing Harris v. State, 843 S.W.2d 34 (Tex. Crim. App.
1992)) (almost ten years between filing of motion to revoke and arrest and minimal efforts to
apprehend); Rodriguez v. State, 840 S.W.2d 516 (Tex. Crim. App. 1991) (approximately two years
between filing of motion to revoke and revocation of probation and one year between expiration of
probation and revocation of probation; State knew person's address and did nothing to apprehend); 
Langston v. State, 800 S.W.2d 553 (Tex. Crim. App. 1990) (eight months between filing of motion
to revoke and arrest and over seven months between expiration of probation and arrest; State knew
person's address and no evidence he was hiding). In the present case, the State's actions involved
considerably more than mailing a letter and a background check, as detailed above. Furthermore,
although more than two years elapsed between the filing of the motion to revoke and the arrest, only
29 days elapsed between the expiration of Miller's probationary period and his arrest. The record
demonstrates that Miller ceased reporting to his probation officer, did not respond when informed
by Sturgeon that a capias and arrest warrant would be issued, did not respond when he was sent a
letter informing him that a capias and arrest warrant had been issued and requesting him to report,
and was never located at his Lampasas address when Kucker visited, although others apparently
could reach him there. (4)

 Miller also contends that there is no evidence that his name and information were
entered into the TCIC or NCIC network database; however, what he fails to state is that there was
no evidence to the contrary. The record is silent on this issue. As this constitutes only one of many
factors in determining whether the State exercised reasonable investigative efforts, we do not find
this absence of proof dispositive.

 Finally, Miller contends that there was evidence that he could have been apprehended
by tracking him in connection with charges filed against him in Burnet County. Sturgeon's
testimony indicates that Miller was arrested and released on bond in January 1999, before the capias
and motion to revoke were filed. Sturgeon called Lisa Whitehead at the Burnet County courthouse
in January and again in April 1999. In April, he requested a copy of the complaint, but the record
does not indicate anything further, including whether Miller made a court appearance at which the
State would have had an opportunity to apprehend him. We do not find this determination
dispositive in light of the other investigative efforts made by the State.

 As demonstrated by the record, this is not a case where the State knew where Miller
was and then did nothing; nor is this a case where the State offered no explanation for the delay in
apprehending Miller. We conclude that the State presented sufficient evidence of reasonable
investigative efforts and, therefore, satisfied its due diligence burden. Accordingly, the trial court
did not abuse its discretion in revoking Miller's probation.


CONCLUSION


 Having overruled Miller's issues, we affirm the trial court's order.



__________________________________________

Mack Kidd, Justice

Before Justices Kidd, Patterson and Puryear

Affirmed

Filed: September 26, 2002

Do Not Publish

1. The record indicates that the State filed motions to revoke his probation and amendments
to those motions in 1992, 1993, 1994, and 1995. In 1996, a judgment adjudicating guilt was entered
based on the original 1986 conviction, and Miller was sentenced to five years, probated for that same
period, and ordered to a substance abuse felony punishment facility. He was released from the
facility in 1997. 
2. TCIC and NCIC are criminal information databases used by law enforcement agencies.
3. Sturgeon testified that, although the capias and arrest warrant had been filed February 16,
the arrest warrant had not yet been issued by February 19. As a result, he was not authorized to
arrest Miller; accordingly, he informed him of the impending events.
4. Both Draper and Mahowald testified that Miller was at the Lampasas address each time they
visited. Both also testified that they spoke to him by phone and he was there each time they called. 
In addition, Draper testified that he was able to send Miller mail at the Lampasas address.