**James H. SMITH, Jr., Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 06–03–00091–CR.**

Court of Appeals of Texas, Texarkana.

Submitted Nov. 6, 2003.

Decided Nov. 7, 2003.

William T. Hughey, Marshall, for appellant.

Joe Black, Dist. Atty., Al Davis, Asst. Dist. Atty., Marshall, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

James H. Smith, Jr., appeals the trial court's decision to revoke his community supervision and sentence him to 180 days' confinement in jail for the misdemeanor offense of criminal trespass. In his sole point of error, Smith contends the State failed to use due diligence in executing the arrest warrant associated with the motion to revoke Smith's community supervision. We agree.

## I. Background

Smith pled guilty December 11, 1999, to the offense of criminal trespass. Pursuant to a plea agreement, the trial court sentenced Smith to 180 days' confinement in jail and a fine of $125.00. The trial court, however, probated the jail portion of Smith's sentence for a period of twelve months and placed Smith on community supervision.

On July 17, 2000, the State filed a motion to revoke Smith's community supervision. The trial court issued a warrant for Smith's arrest the following day. Thirty-two months later, on March 17, 2003, police arrested Smith in Marshall, Texas.

On April 3, 2003, Smith asked the trial court to dismiss the motion to revoke. He alleged the State failed to use due diligence in executing the revocation warrant. The trial court simultaneously held a hearing April 16, 2003, on Smith's request for dismissal and the State's motion to revoke. Smith pled "not true" to violating the terms and conditions of his community supervision. At the conclusion of the hearing, the trial court orally announced Smith had presented an important issue on due diligence that "is going to be more properly addressed by our appellate court." Then the trial court (impliedly) overruled Smith's dismissal request, found the allegations contained in the State's motion to be true, revoked Smith's community supervision, and sentenced him to the full term of confinement. The trial court ordered Smith's sentence in the case to run concurrently with his sentence in Harrison County cause number 2000–0177.[1]

## II. Standard of Review for Claims of Due Diligence

The issue of the lack of due diligence is a defense that the defendant must

---

1. Smith also appealed the revocation of his community supervision in Harrison County cause number 2000–0177. We address the merits of his appeal in that case by way of separate opinion issued today in *Smith v. State*, No. 06-03-00092-CR, 2003 WL 22520214 (Tex.App.-Texarkana Nov. 7, 2003, no pet. h.).

raise before or during the revocation hearing. *Peacock v. State,* 77 S.W.3d 285, 287–88 (Tex.Crim.App.2002); *Brecheisen v. State,* 4 S.W.3d 761, 763 (Tex.Crim.App. 1999). Due diligence is not an affirmative defense, meaning that, once the defendant raises the due diligence issue, the state incurs the burden of persuasion to show, by only a preponderance of the evidence, it used due diligence in executing the warrant and in holding a hearing on the motion to revoke. *Peacock,* 77 S.W.3d at 288; *Brecheisen,* 4 S.W.3d at 763. Nor is a claim the state failed to use due diligence a jurisdictional bar; instead, the doctrine of due diligence finds its origin in principles of equity, calling for relief based on the justice system's sense of fair play and reasonableness. *See Ballard v. State,* 86 S.W.3d 754, 756 (Tex.App.-Waco 2002, pet. granted).

## III. Analysis

■ At the revocation hearing, Smith's community supervision officer, Bob Lane, testified Smith failed to report after the initial April 2000 meeting following the trial court's decision to place Smith on community supervision. Lane also said Smith failed to complete any community service or pay his scheduled fees. When Smith failed to report to Lane's office in May and June, Lane mailed Smith a letter at the address Smith had given Lane during their initial meeting. Lane received no response to the letter and asked the prosecutor to file a motion to revoke, which was done July 17, 2000.

After the motion to revoke was filed and a warrant for Smith's arrest issued, Lane delivered the warrant to the Harrison County Sheriff's Department. The warrant listed Smith's address. Lane took no action in executing the warrant, but he did mail another letter to Smith in May 2001 advising him of the amount still owed on his community supervision fees and the expected expiration date of the case.

Smith testified he has lived at the same address all his life. According to Smith, he was living at the same address between April 2000 and the date of his arrest in March 2003. Smith also told the trial court he had made no attempts to move, hide, or avoid being located. And, according to Smith, it was not until he went to renew his commercial driver's license that he was arrested. Smith did, however, concede that he had violated each of the conditions of his community supervision as alleged by the State and that he had no justification for failing to abide by those conditions of community supervision.

When the state makes no effort, or makes only a minimal attempt, to locate and arrest a person on community supervision for whom the trial court has issued a warrant based on the state's motion to revoke, our courts have usually found a lack of due diligence. *Beaty v. State,* 49 S.W.3d 606, 607 (Tex.App.-Beaumont 2001, pet. ref'd). In contrast, courts have held that out-of-state incarceration of a person on community supervision or his or her failure to report a change of address, may serve to defeat a claim the state failed to exercise due diligence in taking custody of a person alleged to be in violation of community supervision. *Strickland v. State,* 523 S.W.2d 250, 251 (Tex.Crim.App.1975) (failure to report address change); *Hubbert v. State,* 91 S.W.3d 457, 460 (Tex.App.-Texarkana 2002, pet. ref'd) (failure to report address change; out-of-state incarceration); *Beaty,* 49 S.W.3d at 607 (person on community supervision had "taken off").

In the case before us, Smith's unrebutted testimony was that he had maintained the same address from the time prior to his being placed on community supervision until the day of the revocation hearing. Lane testified he mailed only two letters to

Smith's address and had personally delivered the warrant to the Harrison County Sheriff's Office for processing. Lane did not, however, indicate he had made any telephone calls to Smith at his home, nor did Lane testify he had made any efforts to follow up with the sheriff's office regarding whether law enforcement had attempted to arrest Smith. Similarly absent is any testimony from a certified peace officer regarding efforts to execute the warrant. Such evidence would at least show more effort at exercising due diligence than merely sending two letters to Smith's last known address within a period of thirty-two months.

■ Contrary to the State's contention, if law enforcement is responsible for not making more than a minimal effort to execute the warrant, it is the State of Texas that will lose on a due diligence challenge. It is not enough for the community supervision officer to bring the alleged violations to the prosecutor's attention. Nor is it sufficient for the prosecutor to merely file a motion to revoke. It requires the efforts of all three groups—the community supervision department, the prosecutor's office, and law enforcement officials—working together in exercising due diligence in apprehending persons alleged to be in violation of their community supervision. No such showing was made before the trial court in this case. In short, the State failed to present evidence to establish by a preponderance it had exercised due diligence in this case. Therefore, we find the trial court should have dismissed the motion to revoke.

For the reasons stated, we reverse the trial court's judgment and remand with directions to the trial court to dismiss the State's motion to revoke.