

## NUMBER 13-21-00423-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

---

**DAVID DIAZ A/K/A**
**DAVID RAY DIAZ JR.,**                                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                    **Appellee.**

---

On appeal from the 28th District Court
of Nueces County, Texas.

---

## MEMORANDUM OPINION

**Before Justices Benavides, Longoria, and Tijerina**
**Memorandum Opinion by Justice Tijerina**

David Diaz a/k/a David Ray Diaz Jr. pleaded guilty to the offense of assault, family violence by impeding breath or circulation, a third-degree felony. *See* TEX. PENAL CODE ANN. § 22.01(b)(2)(B). After he violated the terms of community supervision, the trial court revoked community supervision and Diaz received a sentence of three years'

confinement. By three issues, Diaz contends that the trial court improperly revoked his community supervision because (1) his pleas of true were not made knowingly; (2) the trial court did not hear testimony on due diligence; and (3) the trial court did not "hear[] rebutting testimony on defendant's affirmative defenses." We affirm.

## I. BACKGROUND

Pursuant to a plea agreement with the State, Diaz pleaded "guilty" to the offense of assault family violence by impeding breath or circulation. *See id.* The trial court adjudicated Diaz guilty, sentenced him to three years' confinement, suspended the sentence, and placed Diaz on community supervision for a period of three years.

The State filed two motions for revocation; however, the trial court continued Diaz on community supervision after conducting two separate revocation hearings. In 2021, the State filed a third motion claiming that Diaz again violated the terms of community supervision.[1] The trial court held a hearing on the State's third motion to revoke wherein Diaz pleaded "true" to the following allegations: (1) failing to report to the community supervision corrections department officer as directed on twenty-one occasions; (2) failing to pay court costs, attorney fees, supervision fees, the victim compensation fund, and additional court costs; (3) failing to provide a new address to the community supervision officer within twenty-four hours of that address change; and (4) failing to "be supervised under zero tolerance and fail[ing] to follow the zero tolerance . . . conditions." Specifically, Diaz pleaded "true" to violating the zero tolerance conditions by "failing to report as

---

[1] Diaz was originally placed on community supervision on October 24, 2016, for three years. However, the trial continued Diaz on community supervision after he pleaded true to violating the terms and the trial court extended the period of community supervision three times in 2017, 2018, and 2019.

2

directed" and by "committing new law violations."

Diaz testified that he pleaded "true" to not reporting to his community supervision officer for fifteen months in a row. However, according to Diaz, he suffered from Covid-19 for forty-five days during the time he failed to report. Diaz claimed that he had reported to Bee County instead of Nueces County as ordered. Diaz stated that he "made attempts" to report as required. However, Diaz admitted that he "didn't go in" to the community supervision office in Corpus Christi, Texas as required.

The State argued that Diaz had "done poorly" on community supervision and had not reported in "over a year." The State commented that Diaz had previously been continued on community supervision twice and was "on zero tolerance." Diaz argued that although he "didn't do what he was supposed to," "he just wanted the court to know that he did make some efforts." Diaz said, "We are just asking the court to consider that rather than the three-year sentence, that the court consider a two-year sentence, Your Honor."

The trial court accepted Diaz's pleas of "true," granted the motion to revoke community supervision, and sentenced Diaz to three years' confinement. This appeal followed.

## II.    STANDARD OF REVIEW AND APPLICABLE LAW

We review the trial court's decision to revoke community supervision under an abuse of discretion standard. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006). A single violation will support the trial court's decision to revoke community supervision. *Garcia v. State*, 387 S.W.3d 20, 26 (Tex. Crim. App. 2012); *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. [Panel Op.] 1980). A defendant's plea of true,

3

standing alone, sufficiently supports revocation of community supervision. *Smith v. State*, 286 S.W.3d 333, 342 (Tex. Crim. App. 2009) ("We have long held that 'one sufficient ground for revocation would support the trial court's order revoking' community supervision."); *Moore*, 605 S.W.2d at 926; *Jones v. State*, 571 S.W.2d 191 193–94 (Tex. Crim. App. [Panel Op.] 1978). The State must prove that the defendant violated the conditions of community supervision by a preponderance of the evidence. *Rickels*, 202 S.W.3d at 763. We view the evidence in the light most favorable to the trial court's ruling. *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984).

### III.    PLEA ADMONISHMENTS

By his first issue, Diaz contends that "No one testified that [he] knowingly signed and/or understood his rights nor consequences of the plea. The Court admitted the signed and sworn to [a]dmonishments and found the allegations true and proceeded to punishment."[2] The State responds that the record belies this claim.

### A.    Applicable Law

A plea of "true" to having violated a term or condition of community supervision must be voluntarily made. *LeBlanc v. State*, 768 S.W.2d 881, 882 (Tex. App.—Beaumont 1995, no pet.). "A record that indicates that the trial court properly admonished the defendant presents a prima facie showing that the guilty plea was made voluntarily and knowingly," and the burden shifts to the appellant to prove the plea was entered without

---

[2] In the section of the brief entitled, "Issues Presented," Diaz states: "The court erred in admitting plea and admonishment exhibits without hearing medical mental evidence." However, in the argument section of the brief, Diaz does not mention medical mental evidence or argue that the trial court erred in this manner. Therefore, to the extent Diaz wishes to make this argument, we conclude that it is inadequately briefed. *See* TEX. R. APP. P. 38.1(i).

4

his understanding the consequences. *Labib v. State*, 239 S.W.3d 322, 332 (Tex. App.—Houston [1st Dist.] 2007, no pet.). "An accused who attests when he enters his plea of guilty that he understands the nature of his plea and that it is voluntary has a heavy burden on appeal to show that his plea was involuntary." *Id.*

## B. Analysis

The record shows that the trial court admonished Diaz at the revocation hearing. Diaz stated that he understood his rights and the consequences of his plea of "true." In addition, Diaz acknowledged that he knowingly swore to and signed the trial court's written admonishments. Specifically, the following occurred:

[Trial Court]: All right. I'm going to—have you had plenty of time to discuss this case with your attorney?

[Diaz]: Yes, ma'am.

[Trial Court]: Are you satisfied with the way [appointed counsel] has represented you so far?

[Diaz]: Yes, ma'am.

[Trial Court]: [Trial counsel], the contact you have had with your client, do you believe he is competent to stand trial?

[Counsel]: Yes, Your Honor. He is aware of all the allegations in the motion to revoke, and we are ready to proceed with a plea of true.

[Trial Court]: All right. Mr. Diaz, have you ever been found incompetent?

[Diaz]: No, ma'am.

[Trial Court]: Do you fully understand the proceedings that are taking place?

[Diaz]: Yes, ma'am.

| | |
|---|---|
| [Trial Court]: | Do you want this court to read it? |
| [Diaz]: | No, ma'am. |
| [Trial Court]: | Thank you. I'm going to show you some admonishments and ask you if those documents were explained to you by your attorney. |
| [Diaz]: | Yes, ma'am. |
| [Trial Court]: | They will be on your screen as well. Do you see these admonishments? Were those explained to you by your attorney? |
| [Diaz]: | Yes, ma'am. My attorney delivered a copy of those. |
| [Trial Court: | And that is your signature on these documents? |
| [Diaz]: | Yes, ma'am, it is. |
| [Trial Court]: | All right. Very well. Now the motion to revoke contains allegations that you have violated conditions of probation. |
| . . . . | |
| | So [Diaz] is pleading true to violating Condition 4, one, two, three, four, five, six, seven, eight, nine, ten, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21 times for failing to report as directed. Is that correct, Mr. Diaz? Yes? |
| [Diaz]: | Yes, ma'am. |
| [Trial Court]: | It also alleges that you have violated Condition 11(a), (b), (c), (d), where you failed to pay your court costs, attorney fees, supervision fees, victim compensation fund, additional court costs. Are these all true? |
| [Diaz]: | Yes, ma'am. |
| [Trial Court]: | All right. It also alleges that you have violated Condition 19, where you failed to provide your new address to |

6

> your probation officer within 24-hours of that change. Is this true as well?

[Diaz]: No, I haven't changed my address. It's the same. What address do y'all have? Well, I guess it is true, I forgot about that.

[Trial Court]: It also alleges violation of Condition 22(g) and G(1) and G(2) where you were to be supervised under zero tolerance and you failed to follow the zero tolerance on your conditions. Are these true or not true?

[Diaz]: They are true.

[Trial Court]: Now has anyone forced to you plead true to these violations?

[Diaz]: No, ma'am.

The trial court's written admonishments, which are included in the record, are signed and initialed by Diaz. Specifically, Diaz initialed that he understood the admonishments, the range of punishment, and the consequences of his pleas. Diaz initialed that he understood the explanation of his constitutional and statutory rights and that he had been provided a copy of the conditions of community supervision, which had been explained to him. Diaz initialed that he was entering his "plea of true to at least one of the alleged violations in the motion" and that his "plea of true" was made "freely and voluntarily and without force, threats, persuasion, fear[,] or promise." Diaz initialed that he "entered said plea because [he] violated at least one condition of community supervision alleged in the pending motion to revoke."

The trial court's admonishments stated that Diaz's plea "must be voluntary" and that the trial court was unable to accept a plea of "true" "if anyone forced . . . tried to force[,] or persuaded [Diaz] to make that plea." The admonishments further instructed that

7

Diaz had a right to plead not true even if he knew he committed a violation and "force the State to prove by a preponderance of the evidence that [he] violated a condition of community supervision." In addition, the admonishments said that if Diaz pleaded "true" to the allegations, the State would not be required to "produce any evidence against" him. The trial court admonished that: "If the Court revokes your community supervision and the Court had previously found you guilty, the Court may impose the original sentence previously-suspended, even though your lawyer and the State's attorney recommend a lesser or reduced sentence for you."

We conclude that the written and oral admonishments in the record provide prima facie evidence that Diaz made his pleas voluntarily and knowingly and that Diaz has not borne the heavy burden of showing that he entered the pleas without understanding the consequences. *See Labib v. State*, 239 S.W.3d 322, 332. We overrule Diaz's first issue.

## IV. EVIDENCE OF DUE DILIGENCE

By his second issue, citing *Garcia*, 387 S. W. 3d at 24, Diaz complains as follows:

> After admitting the State exhibits, the Court heard punishment testimony. No testimony on due diligence effort(s) to comply with Art. 42.12, Section 24 . . . was presented to the Court. Mr. Diaz testified as to the conditions, multiple covid infections, total closure of probation contact channels, lack of employment, suicide of his significant other after having an affair with a Bee County police officer, no visits by probation department, nor the efforts made to contact Mr. David Diaz, other than while in custody, and Mr. David Diaz's long period of incarceration, that caused the technical failures to report and pay for all or comply with the terms and conditions. The long period of incarceration totaled of over 440 days.[3]

After reading *Garcia*, we construe Diaz's argument as a complaint that the trial court

---

[3] We note that in its judgment, the trial court granted Diaz 494 days of jail time credit.

rejected a due-diligence defense.[4]

Generally, a prerequisite to preserve a claim of error for appellate review is that the record must show the complaining party made "a timely request, objection, or motion" to the trial court that specifically stated the party's complaint. *See* TEX. R. APP. P. 33.1(a)(1); *Garza v. State*, 126 S.W.3d 79, 81–82 (Tex. Crim. App. 2004). The issue of the lack of due diligence is a defense that the defendant must raise before or during the revocation hearing to preserve it for appellate review. *Peacock v. State*, 77 S.W.3d 285, 287–88 (Tex. Crim. App. 2002); *see also Burns v. State*, No. 07-20-00357-CR, 2021 WL 4477744, at *1 (Tex. App.—Amarillo Sept. 30, 2021, no pet.) (mem. op., not designated for publication); *High v. State*, No. 07-18-00198-CR, 2019 WL 2532424, at *2 (Tex. App.—Amarillo June 19, 2019, no pet.) (mem. op., not designated for publication).

In this case, Diaz did not, either before or during the revocation hearing, present

---

[4] The common law allowed for the defendant in a revocation proceeding to claim as a defense "that in executing the capias or warrant and securing a hearing on its motion, the State had failed to exercise 'due diligence,' which required 'reasonable investigative efforts . . . to apprehend the person sought.'" *Garcia v. State*, 387 S. W. 3d 20, 22 (Tex. Crim. App. 2012). The Texas Legislature amended Article 42.12 of the Texas Code of Criminal Procedure in 2003, and it replaced the "common-law due diligence defense." *Id.* at 23. Article 42.12 addressed only revocation proceedings that occurred beyond the expiration of the term of community supervision. *Id.* at 25.

The Legislature repealed Article 42.12, effective January 1, 2017, and it enacted Chapter 42A, entitled "Due Diligence Defense," stating:

> For the purposes of a hearing under Article 42A.751(d), it is an affirmative defense to revocation for an alleged violation based on a failure to report to a supervision officer as directed or to remain within a specified place that no supervision officer, peace officer, or other officer with the power to arrest under a warrant issued by a judge for that alleged violation contacted or attempted to contact the defendant in person at the defendant's last known residence address or last known employment address, as reflected in the files of the department serving the county in which the order of community supervision was entered.

TEX. CODE CRIM. PROC. ANN. art. 42A.756. Likewise, article 42A.756 applies to revocation proceedings. *Id.*

the argument that the State failed to use due diligence in contacting him. He made no request, objection, motion, or even argument concerning due diligence to the trial court. He has thus waived his complaint on appeal. *See Sauls v. State*, 384 S.W.3d 862, 863 (Tex. App.—San Antonio 2012, no pet.) ("An error not preserved in a revocation hearing may be waived."). Therefore, the trial court did not abuse its discretion by revoking Diaz's community supervision. We overrule Diaz's second issue.

### V. MEDICAL TESTIMONY

By his third issue, Diaz states:

Notwithstanding the exhibits and the testimony, Mr. David Diaz appeals seeking recognition of the uncontested affirmative defenses that countered the technical failures to comply. Mr. David Diaz had been referred for mental status review at least three times: Additionally, Mr. David Diaz testified to attempting to notify the probation department of his health, his unemployment status, and his incarceration situations. These impossibility factors were not countered by the State, thus Mr. David Diaz's direct affirmative defense testimony went unchallenged. The pleading true, and by appealing, the unresolved question is whether Mr. David Diaz understood the admonishments and consequences of the plea. If Mr. David Diaz did not knowingly understand that his plea alone was legally sufficient to have the finder of fact revoke the probation, then the State admitted exhibits fail to meet the due process standard of the knowledge requirement that gives life to the liberty interest protection. *Ingraham v. Wright*, 430 U.S. 651, 673–74 (1977).

This appeal in and of itself indicates that Mr. David Diaz was anticipating some other results. Based on the lack of direct evidence on the probationer's mental status, the mental acuteness at the relevant times of execution, and this appeal itself, there is no evidence nor confidence that the admonishments and plea were knowingly executed.

Without direct medical testimony as to Mr. David Diaz's true mental condition at the time the State exhibits were executed or on Mr. David Diaz's ability to understand the consequences of the State exhibits, the trial Court had to speculate on the elements necessary for admissibility of the State exhibits. The Court's ruling was thus an abuse of discretion because the State failed to counter the unchallenged affirmative defense testimony and

10

there was no testimony on Mr. David Diaz's knowingly waiving his due process rights, nor that Mr. David Diaz was aware of the consequences of the plea.

Diaz appears to complain that a medical expert was not presented to discuss his ability to understand his pleas of "true." Thus, the pleas were unknowingly and not voluntarily made. However, Diaz made no objection in the trial court that he was incompetent and instead acknowledged his competence. *See* TEX. R. APP. 33.1. Diaz's trial counsel agreed that Diaz was competent. Moreover, we conclude that this issue is inadequately briefed. *Id.* 38.1(i). Therefore, we overrule Diaz's third issue.

## VI. CONCLUSION

We affirm the trial court's judgment.

JAIME TIJERINA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
23rd day of March, 2023.

11